# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| THOMAS COREY PAYNE, and<br>KAYLA HARRIS, Individually<br>and on Behalf of All Others Similarly<br>Situated,<br><br>PLAINTIFFS,<br><br>V.<br><br>AMAZON.COM, INC.,<br><br>DEFENDANT. | ) Civil Action No. ___2:17-cv-2313-PMD___<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.     Plaintiffs Thomas Corey Payne and Kayla Harris, by counsel, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Amazon.com, Inc., ("Defendant" or "Amazon"), and upon information and belief and investigation of counsel, state as follows:

### JURISDICTION AND VENUE

2.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and because Plaintiffs and Defendant are residents of different states and/or foreign states.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a), (b) and/or (c), because Plaintiffs suffered injuries as a result of Defendant's acts in this District, a substantial number of the events giving rise to this Complaint occurred in this District, and Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and

markets of this District by conducting business in this District and contracting to supply goods in this District.

4.     This Court has personal jurisdiction over Defendant because the events giving rise to this cause of action took place in this District, Defendant has sufficient minimum contacts with this District, and/or otherwise intentionally and purposefully availed itself of the privilege of conducting business in the state of South Carolina and by placing products into the stream of commerce, including the eclipse glasses at issue in the instant matter, deriving substantial revenue from goods sold and used in the state of South Carolina, and by advertising its products and establishing retail facilities within the state of South Carolina. Accordingly, the exercise of personal jurisdiction over Defendant complies with judicial notions of fair play and substantial justice.

## NATURE OF THE CASE

5.     This is a Class Action Complaint against Amazon for damages and injunctive relief arising from Defendant's violations of South Carolina law, as well as analogous common and products liability protection laws in each state in which it operates.

6.     In addition, Plaintiffs suffered personal injuries and bring a claim for individual physical injuries.

7.     The subject matter of this action includes solar eclipse glasses ("Eclipse Glasses") that were marketed, sold and warranted to the general public by Amazon.

8.     Plaintiffs and members of the proposed class include purchasers of Eclipse Glasses, which were unfit for the purpose for which they were advertised and sold, were extremely dangerous and/or defective, such that if they were used for their intended purpose, Plaintiffs would

and did suffer from headaches and other physical injuries, including, temporary and permanent vision loss and/or impairment.

9.      Defendant knew or should have known the Eclipse Glasses were defective in design and/or manufacturing, were not fit for their intended and ordinary use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendant, or with the reasonable expectations of ordinary consumers such as Plaintiffs and the proposed class.

10.     In fact, Defendant Amazon attempted to recall its Eclipse Glasses on or about August 19, 2017, "out of an abundance of caution" via email to its purchasers, offering a refund to affected customers but failing to disclose either the "scale of the recall or a public list of offending vendors . . . ."[1]     PBS reported that Amazon's recall email included the following language:

> Viewing the sun or an eclipse using any other glasses or filters could result in loss of vision or permanent blindness," Amazon wrote in its email to impacted customers. "Amazon has not received confirmation from the supplier of your order that they sourced the item from a recommended manufacturer. We recommend that you DO NOT use this product to view the sun or the eclipse.[2]

11.     As a result of Defendant's negligence, false advertising and false marketing materials, Plaintiffs and members of the proposed class suffered and continue to suffer injuries and damages from Defendant's sale of an unsafe product in violation of South Carolina law through failing to disclose the dangers of the product as known to Defendant and failing to adequately and fully compensate consumers for the harms suffered, as well as analogous common and products liability protection laws in each state in which they operate.

---

[1] See, http://www.pbs.org/newshour/rundown/amazon-recalls-potentially-hazardous-solar-eclipse-glasses/, last accessed August 22, 2017.
[2] *Id.*

## PARTIES

12.     Plaintiffs are citizens of the State of South Carolina, residing in Charleston, which lies in Charleston County, South Carolina.

13.     Defendant Amazon.com, Inc., is a Delaware corporation with its principal place of business in Seattle, Washington.

14.     Defendant offered the product at issue for retail sale online.

## GENERAL FACTUAL ALLEGATIONS

15.     On August 21, 2017, the entire United States experienced a once every two generations event: a total eclipse of the sun by the earth's moon, also called a Solar Eclipse.[3] During a Solar Eclipse, the moon moves between the sun and the earth. When the orbital planes of both the sun and the moon are identical, the moon casts a shadow onto the earth.[4]

16.     There are three types Solar Eclipses. The first is a partial Solar Eclipse, which happens when the orbital planes of the moon and the sun are not in exact alignment. In a partial Solar Eclipse, the sun will appear to have a shadow across a portion of its surface. The second type of Solar Eclipse is an "annular" Solar Eclipse, which happens when the moon is farther away from the earth. During such events, the moon in front of the sun will appear as a dark disk "on top of a larger sun-colored disk.[5]

17.     The third category of Solar Eclipse, and the type relevant to the claims alleged herein, is "total" Solar Eclipse. Total Solar Eclipses ("TSE") take place only when the sun, moon and earth line up at precisely the same time, and are generally visible only from a small area on earth by those who are in the center of the moon's shadow when it reaches the earth.

---

[3] See, Solar Eclipse 2017, https://www.nasa.gov/eclipse2017, last visited August 22, 2017.
[4] See, Solar Eclipse 2017, https://www.nasa.gov/content/eclipses-and-transits-overview, last visited August 22, 2017.
[5] *Id.*

18.     During a TSE, the moon actually casts two shadows on the earth. The first shadow is known as the "umbra" and is the dark center of the moon's shadow, which gets smaller as it reaches earth. The second shadow is known as the "penumbra" which get larger as it reaches earth. People standing in the penumbra will see a partial eclipse, while those standing in the umbra will see a TSE. Solar Eclipses only last for a few minutes in any one location.  Serious eye injury can occur when people view either partial or TSE without certain protective eyewear.  Indeed, the NASA website warns of this danger on its Eclipse website.[6]

## August 21, 2017 TSE

19.     The 2017 TSE is reported to have been the most viewed in history.[7]  Indeed, it has been estimated that nearly half of America's 323 million people watched or viewed the TSE, with an estimated 20 million watching from the totality, or umbra.[8]

20.     These high 2017 TSE watcher (as opposed to online viewer) numbers are both ominous as well as impressive, because watching an eclipse (staring at the moon's blocking of the sun) without proper eye protection can cause permanent, irreparable eye damage.[9] The American Academy of Ophthalmology ("AAO") states unequivocally that looking directly at the sun can seriously damage your eyes. The AAO admonishes that "[s]taring at the sun for even a short time without wearing the right eye protection can damage your retina permanently."[10]  Even short exposures can cause vision impairment, up to and including blindness, which is known as solar retinopathy.[11]  This potential for harm from viewing a TSE is well known to ophthalmologists and optometrists.

---

[6] *Id.*
[7] See, https://www.vox.com/science-and-health/2017/8/21/16180362/total-solar-eclipse-most-watched-in-history, last accessed August 22, 2017.
[8] *Id.*
[9] See, https://www.aao.org/eye-health/tips-prevention/solar-eclipse-eye-safety, last accessed August 22, 2017.
[10] *Id.*
[11] *Id.*

21.    According to paper published by the Royal College of Ophthalmologists in the United Kingdom, symptoms of solar retinopathy typically show up approximately 12 hours after the viewing event, and can include the following symptoms:

- Blurry vision
- A central blind spot in one or both eyes
- Increased sensitivity to light
- Distorted vision
- Changes in perception of color.[12]

Short term issues arising from unprotected or improperly protected direct Solar Eclipse watching can include "solar keratitis" which is similar to sunburn of the cornea (the front part of the eye) and can cause eye pain and light sensitivity, with symptoms often occurring within 24 hours after exposure.[13]

22.    The AAO warns on its website that the safe way to look directly at the sun is through special purpose solar filters.[14]  This is especially true for looking at the sun directly during a TSE (such the one the nation experienced in August 2017), and irrespective of whether one watches the total solar eclipse from its umbra or penumbra.[15]  These solar purpose filters are used in "Eclipse Glasses," and must meet a stringent worldwide standard known as ISO 12312-2. Commercially available sunglasses, even with darkest and polarized lenses, do not meet ISO 12312-2 requirements and are not safe for viewing Solar Eclipses.[16]  Only those glasses with lenses that meet the very stringent requirements of ISO 12312-2 are suitable for safe direct Solar Eclipse viewing.

---

[12] See, https://www.cbsnews.com/news/did-the-solar-eclipse-damage-your-eyes-heres-how-to-tell/, last viewed August 22, 2017
[13] See, https://www.washingtonpost.com/news/to-your-health/wp/2017/08/22/do-your-eyes-hurt-after-the-solar-eclipse-heres-what-you-need-to-know/?utm_term=.311047321af1, last viewed August 22, 2017.
[14] See, https://www.aao.org/eye-health/tips-prevention/solar-eclipse-eye-safety, last accessed August 22, 2017.
[15] Id.
[16] Id.

23.    The popularity of the 2017 TSE created an economic boom for Eclipse Glasses makers. As of July 27, 2017, it was reported that American Paper Optics, located in Bartlett, Tennessee, had produced 37 million Eclipse Glasses, and was expecting to make and sell 100 million.[17] USA Today reported that approximately 10 million Eclipse Glasses manufactured by American Paper Optics were sold to Amazon.[18]

24.    On or about August 1, 2017, Plaintiff Corey Thomas Payne purchased from Amazon a three-pack of Eclipse Glasses that were delivered to his home in Charleston, South Carolina on August 3, 2017. Corey Thomas Payne gave one pair of the Eclipse Glasses to his fiancé, Kayla Harris. Both Plaintiffs used the Eclipse Glasses to view the TSE on August 21, 2017, and did not view the eclipse during any time without wearing the Eclipse Glasses.

25.    Plaintiffs did not receive notice of the recall from Amazon.

26.    Later that day, both Plaintiffs began to experience pain and discomfort, headaches, eye watering and other symptoms. Thereafter, both Plaintiffs began to see dark spots in their line of vision, suffered vision impairment, including blurriness, a central blind spot, increased sensitivity, changes in perception of color, and distorted vision.

27.    Amazon knew the requirements that made Eclipse Glasses safe to use for viewing the TSE on August 21, 2017, and that providing defective Eclipse Glasses that did not meet the requisite standards would result in eye injury and vision impairment.

28.    Upon information and belief, Amazon negligently advertised, marketed, and distributed defective, unsafe Eclipse Glasses to customers via online sales prior to the August 21,

---

[17] See, https://www.usatoday.com/story/tech/science/2017/07/27/solar-eclipse-2017-business-booming-makers-glasses/517129001/, last accessed August 22, 2017.
[18] *Id.*

2017 TSE; Eclipse Glasses did not meet the ISO 122312-2 requisite standards for eye protection and as such were defective.

29.    Amazon's August 19, 2017 email "recall" was tragically too little, too late. Its email notification was insufficient to timely apprise customers of the defective nature of their glasses, and resulted in Plaintiffs and members of the proposed class using defective Eclipse Glasses to view the August 21, 2017 TSE unknowing that the glasses were unfit for their intended purpose.

30.    Upon information and belief, many Eclipse Glasses sold by Amazon were sold in packs of 3 and 20, and distributed to individuals, who never received a warning email. Notwithstanding Amazon's woefully inadequate email notification, any and all users of Eclipse Glasses were subjected to unreasonable and foreseeable risks of severe and permanent eye injury due to the negligence of Amazon.

31.    As a direct and proximate result of Defendant's conduct in selling and distributing unsafe Eclipse Glasses, Plaintiffs and the class have suffered a significant increased risk of injury or disease, requiring an award of the cost of a program for medical monitoring for the early detection of such eye injury, disease or disease resulting from exposure to the sun caused by Defendant's unsafe Eclipse Glasses.  Reasonable medical procedures exist for the early detection of eye injury, disease process and disease caused by unsafe exposure to the sun resulting from exposure to the sun from Defendant's unsafe Eclipse Glasses.  Early detection of injury, disease or disease process resulting from exposure to the sun caused by Defendant's unsafe Eclipse Glasses will benefit Plaintiffs and Class Members.

32.    Plaintiffs and members of the proposed class have or will experience varying degrees of eye injury ranging from temporary discomfort to permanent blindness.

## CLASS ALLEGATIONS

33.     A class action is the proper form to bring Plaintiffs' claims under FRCP 23. The potential class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

34.     This action satisfies all requirements of FRCP 23(a), (b)(1), and (b)(3), including numerosity, commonality, typicality, adequacy, predominance, and superiority.

35.     **Numerosity and Ascertainability:** The Class is so numerous that joinder of all members is impracticable. While the exact number is unknown at this time, it is generally ascertainable by appropriate discovery, and based upon the Defendant's sales volume, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

36.     **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class wide litigation. Resolution of common questions of law and fact will not turn on the individual behavior of members of the class, but on the Defendant's standardized conduct. These shared questions predominate over individual questions, and they include, without limitation:

     a.  Whether the Eclipse Glasses were unsafe and/or defective;

     b.  Whether Defendant knew or should have known the Eclipse Glasses were unsafe and/or defective;

    c.   Whether Defendant had a duty to distribute and sell the Eclipse Glasses such that they were neither defective, nor unreasonably dangerous when used as intended;

    d.   Whether Defendant owed a duty to inspect the Eclipse Glasses it distributed to Plaintiffs and members of the class;

    e.   Whether Defendant inspected the Eclipse Glasses before marketing and distributing those to Plaintiffs and members of the class;

    f.   Whether Defendant failed to adequately warn purchasers of Eclipse Glasses of the defective nature of the glasses;

    g.   Whether Defendant owed duties to Plaintiffs and the proposed class, the scope of those duties, and if they breached those duties;

    h.   Whether Defendant made warranties to Plaintiffs and the proposed class, the scope of those warranties, and if they breached those warranties;

    i.   Whether Defendant's efforts to recall the eclipse glasses and prevent use of the Eclipse Glasses were adequate;

    j.   Whether Defendant's conduct constitutes violation of the law asserted herein;

    k.   The extent of damages caused by Defendant's acts and omissions, and whether Plaintiffs and the proposed class are entitled to injunctive or declaratory relief.

37.   **Typicality:** Plaintiffs' claims are typical of those of the other class members because Plaintiffs, like every other class member, have been damaged by Defendant's negligent and/or reckless conduct because Plaintiffs incurred losses and injuries relating to the purchase of Eclipse Glasses in that they did not get the benefit of the bargain and get what they paid for. Further, the factual bases of Defendant's misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all class members.

38.     The claims of the Class Representative Plaintiffs are furthermore typical of other class members because Plaintiffs makes the same claims as other class members. Plaintiffs have interest in seeking compensation from Defendant for injuries suffered due to the purchase of defective Amazon Eclipse Glasses.

39.     **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the class because Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other class members. Plaintiffs seeks no relief that is antagonistic or adverse to the members of the class and the damages Plaintiffs suffered are typical of other class members. Further, Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving unfair, false, misleading and deceptive advertising. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.

40.     **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved as Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate their claims against Defendant, including Amazon, one of the largest retailers in the world. Further, even for those class members who could afford to litigate such a claim, it would remain an economically impractical alternative.

11

Class action treatment will achieve one the primary purpose of the class action mechanism, enhancing the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.

41.    The nature of this action and the nature of South Carolina law and consumer protection and product liability laws available to Plaintiffs and the class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the class members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed to an inherently defective and extremely dangerous product resulting in injuries and damages is representative of that experienced by class members and will establish the right of each member of the class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

42.    The proposed class is described as follows:

**All persons residing in South Carolina ("South Carolina Class") and/or the United States ("Nationwide Class") who purchased unsafe Eclipse Glasses from Amazon.com through its website prior to August 21, 2017.**

43.    Plaintiffs reserve the right to modify or amend the definition of the proposed class if discovery and further investigation reveals that the class should be expanded, divided into additional subclasses or modified in any other way.

44.    Plaintiffs will fairly and adequately protect the interests of the class. The interests of the class representatives are consistent with those of the other members of the class. In addition,

Plaintiffs are represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

45.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

46.    Class-wide declaratory, equitable, and injunctive relief is appropriate pursuant to Rule 23(b)(1) and/or (b)(2) because Defendant have acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Defendant's liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Class-wide relief assures fair, consistent and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendant's duties to perform corrective action.

47.    Excluded from the class are:

a.  Defendant and any entities in which Defendant has controlling interest;

b.  Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.  All persons or entities that properly execute and timely file a request for exclusion from the class;

e.  Any attorneys representing the Plaintiffs or the class.

48.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would

advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

     a. Whether the Eclipse Glasses were unsafe and/or defective;

     b. Whether Defendant knew or should have known the Eclipse Glasses were unsafe and/or defective;

     c. Whether Defendant failed to adequately warn purchasers of Eclipse Glasses of the defective nature of the glasses;

     d. Whether Defendant's efforts to recall the eclipse glasses and prevent use of the eclipse glasses were adequate;

     e. Whether Defendant owed duties to Plaintiffs and the proposed class, the scope of those duties, and if they breached those duties;

     f. Whether Defendant made warranties to Plaintiffs and the proposed class, the scope of those warranties, and if they breached those warranties; and

     g. Whether Defendant's conduct constitutes violation of the law asserted herein.

## FIRST CAUSE OF ACTION
## VIOLATION OF S.C. CODE ANN. § 39-5-10, ET SEQ.
## SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

49.    Plaintiffs, individually and on behalf of themselves only, repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

50.    At all times relevant, Defendant violated the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq., by the use of false or misleading representations or omissions of material fact in connection with the marketing, advertising, promotion and sale of Eclipse Glasses.

51.    Plaintiffs are consumers, purchasers or other persons entitled to the protection of

the South Carolina Unfair Trade Practices Act.

52.    The South Carolina Unfair Trade Practices Act declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Defendants violated the South Carolina Unfair Trade Practices Act in the manner described above, including by the use of false or misleading representations or omissions of material fact in connection with the marketing, advertising, promotion and sale of Eclipse Glasses to consumers.

53.    Plaintiffs dispute the adequacy, timeliness, and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the defective Eclipse Glasses resulted in foreseeable and preventable harm to customers including Plaintiffs.

54.    By reason of such violations and pursuant to the South Carolina Unfair Trade Practices Act, Plaintiffs are entitled to recover all of the monies paid for the defective products, to be compensated for the lost value arising out of the use of the product, and to recover any and all consequential damages recoverable under the law including, but not limited to, exposure to a dangerous and defective product, medical expense, both past and future lost wages, and other losses.

55.    Privity existed between Plaintiffs and Defendant.

56.    In connection with the sale of the defective product to Plaintiffs, Defendant, through its employees, agents and representatives, violated the South Carolina Unfair Trade Practices Act by engaging in unfair or deceptive acts or practices, failing to disclose the dangerous design and/or manufacturing defect of the product, and failing to adequately and fully compensate Plaintiffs.

57.    As a direct and proximate result of unfair and/or deceptive acts or practices,

Plaintiffs were damaged and suffered injuries resulting from the dangerous design and/or manufacturing defect of the product described herein.

58.     Plaintiffs are entitled to equitable relief, including restitutionary disgorgement of monies unfairly, deceptively and/or unlawfully collected by Defendant and an injunction prohibiting Defendant from engaging in the same or similar practices described herein in the future.

59.     Pursuant to the South Carolina Unfair Trade Practices Act, Plaintiffs are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

## SECOND CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER
## PROTECTION STATUTES

60.     Plaintiffs, individually and on behalf of the proposed class, repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

61.     Defendant engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below. The direct and proximate result of Defendant's misrepresentations and unlawful course of conduct was the inducement of Plaintiffs and members of the class to purchase unsafe and/or defective Eclipse Glasses from Defendant.

62.     In connection with the sale of the defective product to both Plaintiffs and members of the proposed class, Defendant, through its employees, agents and representatives, violated state consumer protection statutes by engaging in unfair or deceptive acts or practices, failing to disclose the unsafe and/or defective design and/or misbranding of the product, and failing to adequately and fully compensate consumers.

63.     Plaintiffs dispute the adequacy, timeliness and efficacy of any and all refund and/or

recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the defective Eclipse Glasses resulted in foreseeable and preventable harm to customers including Plaintiffs.

64.     Defendant intended that Plaintiffs and members of the proposed class would rely on their materially deceptive practices; and that Plaintiffs and members of the proposed class would purchase Eclipse Glasses from Defendant as a consequence of the deceptive practices, including Defendant's false advertising, misrepresentations and omissions of material facts, including but not limited to the safety of the product for its intended use. Plaintiffs and members of the proposed class were deceived by Defendant's misrepresentations, which constitute unfair and deceptive acts and practices.

65.     As a direct and proximate result of unfair and/or deceptive acts or practices, Plaintiffs and members of the proposed class suffered an ascertainable loss, in that they paid for a product that they would not have purchased had Defendant not engaged in unfair and deceptive conduct. Plaintiffs were damaged and suffered injuries resulting from the dangerous design and/or misbranding and false advertising of the product described herein. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendant's conduct.

66.     Under the statutes listed herein to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices, Defendant is the supplier, advertiser and seller that is subject to liability for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

67.     By engaging in the foregoing conduct, Defendant violated the following States' Unfair and Deceptive Trade Practices and Consumer Fraud Laws:

a.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

b.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, et seq.;

c.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-101, et seq.;

d.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.;

e.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-105, et seq.;

f.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, et seq.;

g.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, et seq.;

h.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 283901, et seq.;

i.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

j.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, et seq.;

k.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, et seq.;

l.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, et seq.;

m.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, et seq.;

n.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

o.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, et seq.;

p.  Defendants have engaged in unfair competition or unfair deceptive acts or practices in violation of LSA-R.S. 51:1401, et. seq.;

q.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

r.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. COM. LAW CODE § 13-101, et seq.;

s.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

t.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

u.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, et seq.;

v.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, et seq.;

w.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

x.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

y.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

z.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A: 1, et seq.;

aa. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat.§ 57-12-1, et seq.;

bb. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.;

cc. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

dd. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, et seq.;

ee. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.;

ff. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. 15 § 751, et seq.;

gg. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, et seq.;

hh. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of PA. CONS. STAT. § 201-1, et seq.;

ii. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN LAWS § 6-13.1-1, et seq.;

jj. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

kk. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

ll. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

mm.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, et seq.;

nn. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451 et seq.;

oo. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

pp. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

qq. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, et seq.;

rr. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT § 100.18, et seq.; and

ss. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN § 40-12-101, et seq.

68.    As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiffs and members of the class are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF UNIFORM DECEPTIVE TRADE PRACTICES ACTS**

69.    Plaintiffs, individually and on behalf of the proposed class, repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

70.    Plaintiffs assert this claim for violations of the Uniform Deceptive Trade Practices Act ("UDTPA"), which prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, … uses, [or] benefits … that they do not have," on behalf of all Class members who reside in the twenty-three states who have enacted these provisions of the UDTPA.

71.    Defendant engaged in deceptive trade practices in violation of the twenty-three state consumer protection statutes that incorporate the provisions of the UDTPA quoted above by, inter alia, failing to provide a product free from inherent defect; failing to properly warn consumers of the inherent dangers of the product; inadequately testing the product before placing the product into interstate commerce; failing to provide a product that would meet the reasonable expectations of the ordinary consumer as to its safety. The Eclipse Glasses were under the exclusive control of Defendant prior to sale and Defendant had a duty to warn purchasers of the dangers posed by the product in an effective manner.

72.    Plaintiffs dispute the adequacy, timeliness and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the defective Eclipse Glasses resulted in foreseeable and preventable harm to customers including Plaintiffs.

73.    The kinds of harms that befell Plaintiffs and members of the proposed class were foreseeable results of the defects in the product as alleged herein. Neither Plaintiffs nor members of the proposed class had any reason to know, prior to or at the time of purchase, or at any time prior to their injuries, that the Eclipse Glasses were defective, harmful and dangerous to consumers.

74.    Defendant has violated the deceptive trade practices statutes of the following states that incorporate the provisions of the UDTPA quoted above, as follows:

a.    Defendants have engaged in deceptive trade practices in violation of Ala. Code § 8-19-5, et seq.;

b.    Defendants have engaged in deceptive trade practices in violation of Alaska Stat. § 45.50.471, et seq.;

c.    Defendants have engaged in deceptive trade practices in violation of Cal. Civ. Code § 1770 et seq.;

d.    Defendants have engaged in deceptive trade practices in violation of 6 Del. C. § 2532, et seq.;

e.    Defendants have engaged in deceptive trade practices in violation of Ga. Code Ann. §§ 10-1-372, et seq. 10-1-393, and 26-2-29 et seq.;

f.    Defendants have engaged in deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3, et seq.;

g.    Defendants have engaged in deceptive trade practices in violation of Idaho Code § 48-603 et seq.;

h.    Defendants have engaged in deceptive trade practices in violation of 815 Ill. L.C.S. § 510/2 et seq.;

i.    Defendants have engaged in deceptive trade practices in violation of 10 Me. Rev. Stat. Ann. § 1212, et seq.;

j.    Defendants have engaged in deceptive trade practices in violation of Mich. Comp. L. Ann. § 445.903 et seq.;

k.    Defendants have engaged in deceptive trade practices in violation of Minn. Stat. Ann. § 325D.44 et seq.;

l. Defendants have engaged in deceptive trade practices in violation of Miss. Code Ann. § 75-24-5 et seq.;

m. Defendants have engaged in deceptive trade practices in violation of Neb. Rev. Stat. §§ 81-2,285 et seq. and 87-302 et seq.;

n. Defendants have engaged in deceptive trade practices in violation of N.H. Rev. Stat. § 358-A:2 et seq.;

o. Defendants have engaged in deceptive trade practices in violation of N.M. Stat. Ann. § 57-12-2 et seq.;

p. Defendants have engaged in deceptive trade practices in violation of Ohio Rev. Code § 4165.02 et seq.;

q. Defendants have engaged in deceptive trade practices in violation of Or. Rev. Stat. § 646.608 et seq.;

r. Defendants have engaged in deceptive trade practices in violation of 10 Penn. Stat. § 162.15 et seq. and 73 Penn. Stat. § 201-2 et seq.;

s. Defendants have engaged in deceptive trade practices in violation of R.I. Gen. Laws § 6-13-1.1 et seq.;

t. Defendants have engaged in deceptive trade practices in violation of Tenn. Code Ann. § 47-18-104 et seq.;

u. Defendants have engaged in deceptive trade practices in violation of Tex. Bus. & Comm. Code § 17.46, et seq.;

v. Defendants have engaged in deceptive trades practices in violation of Utah Code § 13-11a-3 et seq.;

w. Defendants have engaged in deceptive trade practices in violation of W.Va. Code § 46A-6-102 et seq.

75.    As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiffs and members of the class are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE

76.     Plaintiffs, individually and on behalf of the proposed class, repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

77.     Defendant owed a duty of care to Plaintiffs and the proposed class to distribute and sell the Eclipse Glasses such that they were neither defective nor unreasonably dangerous when used as intended, to inspect and ensure the glasses that it provided were in fact safe, to warn of any post-sale defects discovered in its products, and recall dangerous products. Defendant owed duties to Plaintiffs and members of the proposed class as purchasers to use reasonable care to provide true, reliable, and safe information regarding the Eclipse Glasses.  Defendant undertook a duty to reasonably communicate about the safety of the glasses to Plaintiffs and the class.

78.     Defendant knew that viewing the August 21, 2017 TSE without proper eye protection would result in eye injuries and permanent blindness to Plaintiffs and the proposed class members, particularly given the media coverage surrounding the August 21, 2017 TSE.

79.     Defendant knew or had reason to know that Plaintiffs and the proposed class, as consumers and members of the general public for whom the Eclipse Glasses alleged herein was placed into interstate commerce, would be likely to use the Eclipse Glasses in the manner described herein.

80.     Defendant knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiffs and the proposed class's foreseeable use of the Eclipse Glasses alleged herein, which danger would not be obvious to the general public.

81.     Plaintiffs dispute the adequacy, timeliness and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the defective Eclipse Glasses resulted in foreseeable and preventable harm to customers including

Plaintiffs.

82.     Defendant breached its duties by selling and distributing Eclipse Glasses that were unsafe and/or defective, misbranded, and unfit for their intended use, resulting in physical injury, including but not limited to temporary and/or permanent blindness.

83.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiffs and members of the proposed class have suffered injuries, damages and losses as alleged in this Complaint.

84.     Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiffs and members of the proposed class are entitled to an award of exemplary and punitive damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

85.     Plaintiffs, individually and on behalf of the proposed class, repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

86.     Defendant gave false information that the Eclipse Glasses it advertised, marketed, distributed, and sold to customers were safe and effective for their intended use.

87.     Plaintiffs and class members relied upon Defendant's express and implied representations that the Eclipse Glasses were safe for use in viewing the TSE on August 21, 2017.

88.     It was reasonable for Plaintiffs and class members to rely on the representations communicated by Defendant as to the safety and efficacy of the Eclipse Glasses, and Plaintiffs and class members relied on Defendant's representations and advertisements.

89.     As a result of Plaintiffs' reliance on Defendant's representations, Plaintiffs and class members observed the eclipse believing it was safe to use the unsafe and/or defective Eclipse

Glasses provided by Defendant resulting in increased, dangerous exposure to the sun during the TSE.

90.    As a direct and proximate result of Plaintiffs' and class members reliance on Defendant's negligent misrepresentations, Plaintiffs and class members have suffered and will continue to suffer injuries and damages, including but not limited to those identified herein. Accordingly, Defendant is liable to Plaintiffs and class members for compensatory damages.

## SIXTH CAUSE OF ACTION
## NEGLIGENT FAILURE TO WARN

91.    Plaintiffs, individually and on behalf of the proposed class, repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

92.    Defendant knew or should have known that the Eclipse Glasses it advertised, marketed, distributed, and sold to Plaintiffs and class members were not safe for the protection of their eyes while viewing the TSE on August 21, 2017.

93.    Defendant failed to warn Plaintiffs and class members that the Eclipse Glasses they purchased were in fact unsafe and/or defective for the protection of their eyes while viewing the TSE.

94.    Plaintiffs dispute the adequacy, timeliness and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the defective Eclipse Glasses resulted in foreseeable and preventable harm to customers including Plaintiffs.

95.    As a direct and proximate result of Defendant's failure to warn of the unsafe and/or defective nature of the Eclipse Glasses Defendant advertised, marketed, distributed and sold to customers, Plaintiffs and members of the class have suffered and will continue to suffer injuries

and damages as described herein. Accordingly, Defendant is liable to Plaintiffs and class members for compensatory and other damages.

**SEVENTH CAUSE OF ACTION**
**BREACH OF WARRANTY**

96.     Plaintiffs repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

97.     Defendant by and through the sale of the Eclipse Glasses, warranted to consumers and/or foreseeable users, such as Plaintiffs and members of the class, that the glasses were fit for their ordinary, intended and foreseeable use.

98.     Plaintiffs and class members used the Eclipse Glasses in the ordinary, intended and foreseeable manner in which the product was to be used in reliance on said warranties.

99.     Eclipse Glasses were unsafe and/or defective and/or unfit for their ordinary, intended and foreseeable use, rendering them unreasonably dangerous in breach of said warranties.

100.    Defendant's breach of these warranties includes, but is not limited to:

a.  The failure of the glasses;

b.  The failure to inspect and ensure the glasses were safe for their intended use;

c.  The failure to provide adequate warnings concerning the unsafe and defective nature of the glasses once discovered by Defendant;

d.  The failure to provide adequate and effective communications to customers concerning the unsafe and defective nature of the glasses once discovered by Defendant, and improper marketing;

e.  The failure to adequately and effectively communicate the recall to customers so as to avoid the foreseeable danger and subsequent injury as a result of using the unsafe and defective glasses; and

f.  The failure to protect foreseeable users of the glasses from the dangers present in the intended and foreseeable use of the glasses, which dangers were known by Defendant.

101.  Plaintiffs further allege that the breaches of warranties include:

a.  That Defendant knew or should have known of the unsafe, defective and dangerous condition of the Eclipse Glasses;

b.  That Defendant knew or should have known the Eclipse Glasses posed significant risks if used as intended by foreseeable users beyond that understood or contemplated by the ordinary reasonable consumer;

c.  That Defendant placed on the market and in the stream of commerce Eclipse Glasses that were unfit for their intended use and purpose; and

d.  That Defendant placed on the market and in the stream of commerce Eclipse Glasses that were not safe for the purpose for which they were sold.

102.  Plaintiffs and members of the proposed class have incurred damages as a direct and proximate result of Defendants' defective product and Defendants' breach of warranty, in that Plaintiffs and each member of the proposed class have paid the purchase price for the un-merchantable product.

103.  Plaintiffs and class members suffered injuries and the manner by which they occurred was foreseeable to Defendant, as Defendant possessed actual, superior knowledge about the condition of the Eclipse Glasses and knew or should have known that the glasses would injure customers if used in the manner intended.

104.  Plaintiffs and members of the proposed class are entitled to an award of damages for their injuries, to a refund of the purchase price paid for the product, consequential and incidental

damages, costs and expenses, including attorney fees, an injunction prohibiting Defendants from continuing such practices, and all other relief this Court deems appropriate.

## EIGHTH CAUSE OF ACTION
### RULE 23(B)(2) INJUNCTIVE RELIEF

105.    In addition to or in the alternative to the above, Plaintiffs, individually and on behalf of the proposed class, bring this class action under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole.

106.    Such injunctive relief includes, but is not limited to, the implementation and funding of a medical monitoring program for the Plaintiffs and the Class for the early detection of eye injury, disease process and disease resulting from exposure to the sun caused by Defendant's unsafe Eclipse Glasses; an order requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint; and injunctive relief to remedy Defendant's past conduct.

## NINTH CAUSE OF ACTION
### UNJUST ENRICHMENT

107.    Plaintiffs, individually and on behalf of the proposed class, repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

108.    Plaintiffs and members of the proposed class conferred a monetary benefit on Defendant.  Specifically, Plaintiffs and members of the proposed class purchased goods, Eclipse Glasses, from Defendant and provided Defendant with payment.

109.    Defendant knew that Plaintiffs and members of the proposed class conferred a benefit on Defendant, and Defendant profited from the purchases.

110.    As described above, Defendant sold Eclipse Glasses to Plaintiffs and members of the proposed class even though the glasses were defective and were not safe for the purpose for

which it was sold.  Defendant failed to disclose the nature of the defect at the point of sale or properly warn of the defect after the sale.

111.    If Plaintiffs and members of the proposed class had known that the Eclipse Glasses were defective and not safe for the purpose of viewing the TSE, they would not have purchased the Eclipse Glasses from Defendant.

112.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and members of the proposed class conferred on it.

113.    The retention by Defendant of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

114.    Plaintiffs and members of the proposed class are entitled under the laws of their respective states to restitution of the profits unjustly obtained by Defendant, plus interest.

115.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and members of the proposed class, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and members of the proposed class paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendant, as follows:

a.  For an order certifying the proposed class, appointing Plaintiffs and counsel to represent the proposed class and notice to the proposed class to be paid by Defendant;

b.  For damages suffered by Plaintiffs and the proposed class;

c.  For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

d.  For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f. For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g. For Plaintiffs' costs incurred;

h. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and,

i. For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.


Dated: August 29, 2017                              Respectfully Submitted,

                                                    **MCGOWAN, HOOD & FELDER, LLC**

                                                    _s/ James L. Ward, Jr._
                                                    James L. Ward, Jr.
                                                    Fed. ID No. 6956
                                                    321 Wingo Way, Suite 103
                                                    Mt. Pleasant, SC 29464
                                                    Phone: 843-388-7202
                                                    jward@mcgowanhood.com

                                                    Jasper D. Ward IV*
                                                    Ashton Rose Smith
                                                    **JONES WARD PLC**
                                                    The Pointe
                                                    1205 E. Washington St., Suite 111
                                                    Louisville, Kentucky 40206
                                                    Tel. (502) 882-6000
                                                    Fax (502) 587-2007
                                                    jasper@jonesward.com
                                                    ashton@jonesward.com

Steven W. Teppler*
Florida Bar Number 14787
**ABBOTT LAW GROUP, P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: (904) 292-1111
Facsimile: (904) 292-1220
steppler@abbottlawpa.com

Kevin S. Hannon*
Colorado State Bar No. 16015
**THE HANNON LAW FIRM, LLC**
1641 Downing Street
Denver, CO 80218
Telephone: (303) 861-8800
Facsimile: (303) 861-8855
khannon@hannonlaw.com

Jean Sutton Martin*
North Carolina Bar #25703
**LAW OFFICE OF JEAN SUTTON
MARTIN PLLC**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
jean@jsmlawoffice.com

*Counsel for Plaintiffs and the Class*

*pro hac vice application forthcoming*