IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Thomas Corey Payne, and Kayla Harris, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Amazon.com, Inc., <br><br> Defendant. | **DEFENDANT AMAZON.COM, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO STAY** <br><br> C.A. No. 2:17-cv-2313-PMD |

The defendant, Amazon.com, Inc., by and through its undersigned counsel, respectfully submits this memorandum in support of its motion to dismiss and to compel arbitration or, alternatively, to stay pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. The plaintiffs agreed to arbitrate the claims they seek to assert here and, as such, the Federal Arbitration Act mandates that this lawsuit be dismissed.

### FACTUAL BACKGROUND

On August 29, 2017, the plaintiffs filed this proposed class-action lawsuit asserting various claims against Amazon and seeking damages and injunctive relief. (Dkt. 1). The plaintiffs claim to have purchased eclipse glasses on Amazon.com, which glasses were allegedly used by the plaintiffs to view the total solar eclipse on August 21, 2017. *Complaint*, ¶ 24. The plaintiffs allege that Amazon "negligently advertised, marketed, and distributed defective, unsafe Eclipse Glasses to consumers via online sales prior to the August 21, 2017 [eclipse]…" *Id*. at ¶ 28. The plaintiffs propose to represent a very broad and generic class of people who "incurred

1

losses and injuries relating to the purchase of the Eclipse Glasses in that they did not get the benefit of the bargain and get what they paid for." *Id*. at ¶ 37.

If the plaintiffs did, in fact, purchase eclipse glasses on Amazon.com, then the plaintiffs agreed to Amazon's Conditions of Use.  The order screen for Amazon purchases includes express language in two places reminding customers that by placing an order, "you agree to Amazon.com's privacy notice and conditions of use." Vairo Aff., ¶4., Ex. B.[1]  The order screen also provides a link to the Conditions of Use directly below the "Place your order" button.  *Id*. The Conditions of Use include a provision that requires arbitration of "any dispute" arising from the plaintiffs' purchase. *Id*. at ¶ 2, Ex. A.  The arbitration agreement prominently states as follows:

> **DISPUTES**
>
> **Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify.  The Federal Arbitration Act and federal arbitration law apply to this agreement.
>
> **There is no judge or jury in arbitration, and court review of an arbitration award is limited.  However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**

*Id*. (bold type in original).

The arbitration agreement provides a reasonable and efficient mechanism to resolve customer disputes.  The agreement provides that Amazon will pay all arbitrator fees and costs for claims under $10,000 and will not seek recovery of Amazon's own attorneys' fees and costs unless the arbitrator determines that the claims are frivolous.  *Id*.  Moreover, customers may

---

[1] The Affidavit of Gianmarco Vairo is attached as Exhibit 1.

choose to arbitrate by telephone, based on written submissions, or in person in the county where they live or at another mutually agreed location. *Id*. The arbitration agreement also expressly precludes class action lawsuits:

> **We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**

*Id*. (bold type in original).

Finally, the Conditions of Use provide that the Federal Arbitration Act, applicable federal law, and the laws of the state of Washington (Amazon's principal place of business) govern any dispute between the plaintiffs and Amazon:

> **APPLICABLE LAW**
>
> By using any Amazon Service, you agree that the Federal Arbitration Act, applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

*Id*.

Because the plaintiffs' claims relate to products purchased on Amazon.com, the arbitration agreement compels resolution through binding arbitration. Therefore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, Amazon moves the Court to compel arbitration of the plaintiffs' claims and to dismiss this action. Alternatively, Amazon requests, pursuant to 9 U.S.C. § 3, that this matter be stayed until after the plaintiffs have submitted their claims to arbitration and the arbitration proceedings have been completed.

## ARGUMENT

### I.   FEDERAL AND STATE POLICY FAVOR ARBITRATION.

Through enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq., Congress established a strong federal policy in support of arbitration, requiring "rigorous

enforcement" of agreements to arbitrate. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 489 (1987) (FAA "is a congressional declaration of liberal federal policy favoring arbitration agreements."). The FAA expressly provides that arbitration clauses in contracts that involve interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The "liberal federal policy favoring arbitration agreements" manifested by the FAA, is fundamentally a policy guaranteeing the enforcement of private contractual agreements "notwithstanding any state substantive or procedural policies to the contrary." *Moses,* 460 U.S. at 24. Thus, the FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Id.* at 25, n. 32. As noted by the United States Supreme Court, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered," a concern which "requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625026 (1985).

Where the dispute is fairly covered under the terms of a written arbitration provision governed by the FAA, a court called upon to do so must compel arbitration of that dispute. Courts are not at liberty to ignore or decline to enforce a valid arbitration agreement. *See* 9 U.S.C. § 4; *Moses*, 460 U.S. at 24-25. Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24-25.

When an arbitration agreement governed by the FAA covers claims that have been asserted in a lawsuit, the court having jurisdiction over the case must compel arbitration and either dismiss the action or stay further judicial proceedings until the arbitration has been conducted. *See* 9 U.S.C. §§ 3, 4; *Shearson/American Express*, 482 U.S. at 226. Enforcement of arbitration provisions is not discretionary under the FAA and motions to compel arbitration and stay or dismiss pending litigation should be summarily granted. *See* 9.U.S.C. §§ 3-4; *Moses*, 460 U.S. at 22-25 ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. §3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.").

South Carolina state law compels the same result. South Carolina courts have gone to great lengths to ensure that the intent of the parties to arbitrate, as evidenced by their agreement, is upheld. *See Munoz v. Green Tree Financial Corp.*, 542 S.E.2d 360, 364 (S.C. 2001) ("[W]e are guided by the same liberal policy favoring arbitration."); *Zabinski v. Bright Acres Assocs.*, 553 S.E.2d 110, 116 (S.C. 2001) ("While the parties may agree to enforce arbitration agreements under state rules rather than FAA rules, the FAA will preempt any state law that completely invalidates the parties' agreement to arbitrate."); *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 89-90 (2000) ("We have … rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law of would-be complainants.'") (internal citations omitted).

Under Section 15-48-20 of South Carolina's Uniform Arbitration Act, where a valid agreement to arbitrate is found, "the court shall order the parties to proceed with arbitration" and "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order

5

for arbitration or an application therefor has been made." S.C. Code § 15-48-50 (a), (d); s*ee, e.g. Charleston Nat. Country Club, LLC v. Kane*, 2006 WL 6109178 (S.C. Com. Pl. Apr. 10, 2006) ("If an issue is subject to an arbitration provision, the court shall stay the proceeding and order the parties to proceed to arbitration."). As such, both federal law and South Carolina law dictate that actions brought under a valid arbitration agreement, must proceed through arbitration.

II.    PURSUANT TO THE FAA, THE COURT MUST COMPEL ARBITRATION.

A Court must compel arbitration under the FAA if the movant demonstrates the following factors:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration clause which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation omitted).[2] All of these factors are present here.

    A.    THE TRANSACTION INVOLVES INTERSTATE COMMERCE.

The FAA is applicable to arbitration provisions in contracts "involving commerce." 9 U.S.C. §2 (2003). In *Allied Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995), the United States Supreme Court addressed the meaning of the phrase "involving commerce" in the FAA. Specifically, the Court held that the word "involving" is broad and the functional equivalent of "affecting commerce," which "normally signaled Congress' intent to exercise its Commerce Clause powers" in full. Moreover, the Court explained that a transaction

---

[2] Amazon does not expressly brief factors (1) and (4) because they are demonstrated in the complaint itself. For example, the complaint serves as plain evidence of the dispute between the parties which satisfies factor number (1). Likewise, by filing the complaint in this Court, the plaintiffs chose not to submit this dispute to arbitration which satisfies factor number (4).

can be said to "involve interstate commerce" for purposes of the FAA "even if the parties to the contract did not contemplate an interstate commerce connection." *Id.* at 281.

There is no dispute that this matter involves interstate commerce. The plaintiffs are residents of South Carolina suing a company with its principal place of business in Seattle, Washington. *Complaint*, ¶ 13. More broadly, this is a proposed nationwide class action involving the sale of eclipse glasses. The proposed class includes "[a]ll persons residing in South Carolina … and/or the United States … who purchased unsafe Eclipse Glasses from Amazon.com through its website prior to August 21, 2017." *Id*. at ¶ 42. As such, in the most fundamental sense, this matter involves interstate commerce: claims against a Washington-based company for products purchased by individuals located throughout the United States. *McCollum v. Tenet Healthcare Corp.* No. 0:06-1934, 2006 U.S. Dist. LEXIS 84942 (D.S.C. 2006) (finding FAA applicable where defendant was out-of-state company, headquartered in another state, and operated across the United States). Because this matter involves interstate commerce, the third factor is satisfied in support of arbitration.

    **B.**    **THE PLAINTIFFS AGREED TO BINDING ARBITRATION.**

        i.    <u>Washington Law Applies to the Arbitration Agreement</u>.

As an initial matter, in determining whether parties agreed to arbitrate, "courts . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The arbitration agreement the plaintiffs accepted provides that Washington law applies to govern any dispute with Amazon. Challenges to the enforcement of an arbitration provision implicate state law contract principles. *Knox v. Joe Gibson's Autoworld, Inc.*, 2008 US Dist. LEXIS 37677 (D.S.C. 2008) (citing *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998)). In determining the validity of the contract, the court

7

must apply the law selected by the parties. *Nucor Corp. v. Bell*, 482 F.Supp.2d 714, 728 (D.S.C. 2007) ("If the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law.") (citing *Bazzle v. Green Tree Financial Corp.*, 569 S.E.2d 349, 358 (S.C. 2002)).  Therefore, because the parties agreed that Washington law applies, this Court must apply Washington law to determine the validity of the arbitration provision.

      ii.   The plaintiffs agreed to arbitration by making purchases on Amazon.com.

  The arbitration provision at issue is contained in Amazon's Conditions of Use.  When making their purchases, the plaintiffs were required to acknowledge that they would be bound by Amazon's Conditions of Use.  The order screen for Amazon purchases includes express language in two places reminding customers that by placing an order, "you agree to Amazon.com's privacy notice and conditions of use."  The order screen also provides a link to the Conditions of Use directly underneath the "Place Your Order" button.  As such, by placing their orders for eclipse glasses, the plaintiffs accepted Amazon's Conditions of Use, including the arbitration provision.

  Under Washington law, contracts formed in ecommerce transactions in which parties must click a button indicating that they agree to the contract terms (sometimes called "clickwrap agreements"), like those formed by the parties in making purchases on Amazon's website, are enforceable. *See Wiseley v. Amazon.com, Inc.*, No. 15-56799, 2017 U.S. App. LEXIS 18140 (9th Cir. September 19, 2017) (compelling arbitration and holding Amazon's checkout page creates enforceable clickwrap agreement under Washington law).  For example, in *Fagerstrom v. Amazon.com, Inc.*, 141 F.Supp.3d 1051 (S.D. Cal. 2015), the plaintiffs filed a putative class action against Amazon for allegedly deceiving consumers in the manner it priced items for sale

8

on its website. Amazon moved to compel arbitration pursuant to the arbitration provision contained in its Conditions of Use which is identical to the provision at issue in this action. After reviewing the arbitration provision and the manner in which consumers had to accept Amazon's Conditions of Use in order to make a purchase, the Court, applying Washington law, determined that the plaintiffs had manifested consent to the terms of use and compelled arbitration. *See also, e.g., Ekin v. Amazon Servs., LLC*, 84 F.Supp.3d 1172, 1175 (W.D. Wash. 2014) (same); *Peters v. Amazon Servs., LLC*, 2 F.Supp.3d 1165, 1168-69 (W.D. Wash. 2013) (enforcing Amazon clickwrap agreement for sellers under Washington law and compelling arbitration); *Segal v. Amazon.com, Inc.*, 763 F.Supp.2d 1367, 1369 (S.D. Fla. 2011) (enforcing Amazon's terms because "clickwrap agreements are valid and enforceable contracts"); *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829 (S.D.N.Y. 2012) (NY) (enforcing hybrid clickwrap-browsewrap agreement, where plaintiff indicated assent to terms of use by clicking "sign up," but the terms of use were hyperlinked).

Here, the plaintiffs admit that they purchased products on Amazon.com. *Complaint*, ¶ 24. By making a purchase on the Amazon marketplace, the plaintiffs agreed to Amazon's Conditions of Use. Ex. A. As such, the plaintiffs agreed that any claims they had arising out of their purchases would be resolved by individual arbitration.[3] Vairo Aff., ¶ 2, Ex. A. The plaintiffs cannot ignore their agreements and pursue their claims in this court as opposed to binding arbitration.

---

[3] Under Washington law, the plaintiffs are bound by the Conditions of Use regardless of whether they actually read them. *See Spam Arrest, LLC v. Replacements, Ltd.*, 2013 WL 4675919, at 8 (W.D. Wash. 2013) ("subjective evidence, including evidence that a party did not read the contract to which she manifested is not relevant"); *Signavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at 3 (W.D. Wash. 2007) (rejecting argument plaintiff could avoid arbitration agreement because she never read it).

iii.     The arbitration provision is enforceable.

"The [FAA] makes an agreement to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (quoting 9 U.S.C. § 2). This "savings clause" of the FAA "preserves generally applicable contract defenses, such as fraud, duress, or unconscionability." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013). The plaintiffs, however, cannot avoid their agreements to arbitrate on these grounds.

Washington courts recognize two categories of unconscionability – procedural and substantive. *Zuver v. Airtouch Communications*, 103 P.3d 753, 759 (Wash. 2004) (citation omitted). Procedural unconscionability is present when there is a "lack of a meaningful choice, considering all the circumstances surrounding the transaction," including (1) "the manner in which the contract was entered," (2) whether the party had "a reasonable opportunity to understand the terms of the contract," and (3) whether "the important terms [were] hidden in a maze of fine print." *Schroeder v. Fageol Motors, Inc.*, 544 P.2d 20, 23 (Wash. 1975) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449, 121 U.S. App. D.C. 315 (D.C. Cir. 1965)). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh[.]" *Adler Fred Lind Manor*, 103 P.3d 773, 781 (Wash. 2004) (quoting *Schroeder*, 544 P.2d at 23). Terms used to define substantive unconscionability include "shocking to the conscience," "monstrously harsh," and "exceedingly calloused." *Zuver*, 103 P.3d at 759. The party attacking the contract or contract terms bears the burden of proving unconscionability. *See Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 830 (Wash. Ct. App. 2001).

10

The arbitration requirement in the Conditions of Use is not procedurally unconscionable; the plaintiffs accepted the Conditions of Use and arbitration agreement when they made their purchases. Assent to a website's terms and conditions is governed by whether the website provides "reasonable notice" to the customer of the terms and conditions. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31-32 (2d. Cir. 2002) (holding that website users did not assent to an online agreement when they did not have reasonable notice of the terms and conditions). On the order screen, the plaintiffs were notified that "[b]y placing your order, you agree to Amazon.com's privacy notice and conditions of use." The notice is located directly underneath the "Review your order" header such that it is clearly visible when viewing the page. The hyperlink to the Conditions of Use is set off in blue-colored font. *See Wiseley v. Amazon.com, Inc.*, No. 15-56799, 2017 U.S. App. LEXIS 18140 (9th Cir. September 19, 2017) (finding that "notices on Amazon's checkout and account registration pages, which alerted [plaintiff] that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by the additional terms."). The plaintiffs were not required to scroll to another part of the checkout page or click on any additional link to be put on notice that they were bound by the Conditions of Use. *Compare Specht*, 306 F.3d at 32 (finding that internet users had insufficient notice that they were binding themselves to contract terms when they were required to scroll through multiple screens to locate the notice). The plaintiffs had reasonable notice of the Conditions of Use.

Moreover, the Conditions of Use and the arbitration provision itself were prominently displayed. Amazon placed a blue-colored hyperlink at the top of the checkout page to take the plaintiffs directly to the Conditions of Use. The text of the arbitration agreement contained in

11

the Conditions of Use is in boldface for emphasis. *See, e.g., Brown v. MHN Gov't Servs., Inc*, 306 P.3d 948, 954 (Wash. 2013) (finding that an arbitration agreement was not unconscionable where the agreement "was in the same typeface, font, and size as the rest of the [contract] and had a bold, underlined heading labeled 'Mandatory Arbitration'"). The arbitration agreement is concise – only two paragraphs – and, thus, important terms are not hidden in a "maze of fine print." *See Zuver*, 103 P.3d at 761 (holding that important terms of an arbitration agreement were not hidden in a maze of fine print where "the agreement's terms were in normal typeface and font, and the agreement itself was only one page long"). As such, the arbitration agreement is not procedurally unconscionable.

In addition, the plaintiffs had the choice of whether to buy the products at issue on Amazon.com and accept the Conditions of Use and arbitration agreement or shop elsewhere. *See Zuver*, 103 P.3d at 753 (Wash. 2004) ("[T]he key inquiry for…procedural unconscionability is whether [a party] lacked meaningful choice."). The plaintiffs were under no time pressure to assent to the arbitration agreement. They had ample time and opportunity to investigate the terms of the agreement if they wanted to do so prior to making the purchases. *See Adler*, 103 P.3d at 784 (finding that plaintiff had a reasonable opportunity to understand the terms of an arbitration agreement where he presumably had "ample opportunity to contact counsel and inquire about the meaning of its terms"). If the plaintiffs did not wish to accept the Conditions of Use or the arbitration agreement contained therein, they could have canceled their purchase transaction. Vairo Aff. ¶ 4. The plaintiffs cannot claim that anyone forced them to make purchases on Amazon or that they were caught unaware when they chose to accept the Conditions of Use and the arbitration agreement. For all of the above reasons, the agreement is not procedurally unconscionable.

Likewise, the plaintiffs cannot claim that the arbitration agreement is substantively unconscionable – that is, that the agreement is so one-sided that it shocks the conscience. The arbitration agreement provides that Amazon will pay all arbitrator fees and costs for claims under $10,000 and will not seek recovery of its own attorneys' fees and costs unless the arbitrator determines that the claims are frivolous. Vairo Aff. ¶ 2, Ex. A. Moreover, customers may choose to arbitrate by telephone, based on written submissions, or in person in the county where they live or at another mutually agreed location. *Id*. Allowing the plaintiffs to proceed with their claims in this manner is not "shocking to the conscience," "monstrously harsh," and "exceedingly calloused." *Zuver*, 103 P.3d at 759.

To the contrary, in multiple cases in recent years, federal district courts have held that the very same Amazon arbitration agreement is fully enforceable and properly precludes class claims. *See, e.g., Ekin v. Amazon Services, LLC,* 84 F.Supp.3d 1172, 1175 (W.D. Wash. 2014) (finding that Amazon's arbitration agreement was fully enforceable and ordering that the plaintiffs could not litigate a class action regarding shipping costs, but could only pursue their claims on an individual basis in arbitration); *Peters v. Amazon Servs., LLC*, 2 F.Supp.3d 1165, 1168-69 (W.D. Wash. 2013) (enforcing Amazon's arbitration agreement to claims asserted by proposed class of third-party sellers, compelling arbitration, and rejecting efforts to pursue class claims); *Wiseley v. Amazon.com, Inc.*, No. 15-56799, 2017 U.S. App. LEXIS 18140 (9th Cir. September 19, 2017) (affirming district court's order compelling arbitration on customer's attempt to pursue class claims regarding Amazon's pricing procedures). Accordingly, as many courts have recognized and the FAA directs, the Amazon.com arbitration agreement accepted by the plaintiffs is fully enforceable.

iv.     The plaintiffs' claims are within the scope of the arbitration agreement.

The FAA reflects a "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As such, the enforcement of an arbitration agreement "should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, including construction of the contract language itself. *Moses H. Cone*, 460 U.S. at 24-25.

Here, the Conditions of Use unequivocally require arbitration of these claims. The arbitration agreement accepted by the plaintiffs states that "**[a]ny dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com**." Vairo Aff. ¶ 2, Ex. A. (bold type in original). The plaintiffs assert claims in this action based on products they purchased on Amazon.com. Their claims fall squarely within the "any dispute" scope of the arbitration agreement, which is the type of "far reaching" provision that is "routinely used…to secure the broadest possible arbitration coverage." *Chiron Corp. v. Ortho Diagnostics Sys., Inc.* 207 F.3d 1126, 1131 (9th Cir. 2000). Therefore, factor number (2) is satisfied requiring this Court to compel arbitration of the plaintiffs' claims.

C.     THE CLASS ACTION WAIVER PROVISION IN THE ARBITRATION AGREEMENT IS ENFORCEABLE. THEREFORE, THE PLAINTIFFS MUST ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS.

The plaintiffs cannot avoid the arbitration agreement on the grounds that they would prefer to pursue class action claims. The arbitration agreement expressly provides that "**[w]e**

**each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**" Vairo Aff. ¶ 2, Ex. A. (bold type in original). The Supreme Court has made clear that such class action waivers in arbitration agreements are enforceable. For example, in *AT&T Mobility LLC v Concepcion*, the Court enforced a class action waiver contained in an arbitration provision in a cellular telephone contract.  563 U.S. 333 (2011).  Relying on the principle purpose of the FAA to enforce arbitration agreements according to their terms, the Court enforced the class action waiver contained in AT&T's agreement. *Concepcion*, 563 U.S. at 339 ("The principle purpose of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'").

Moreover, the Court has emphasized that arbitration agreements that require bilateral arbitration and contain a class action waiver – like the Amazon Conditions of Use – must be enforced, even in the face of contrary state law or where the costs of pursuing arbitration may exceed the value of an individual claim. *Am. Express Co. v. Italian Colors Rest.*, 2013 U.S. LEXIS 4700, 133 S.Ct. 2304, 2311-12 (2013).  And, an argument that a "ban of class arbitration is unconscionable . . . is now expressly foreclosed by *Concepcion*." *Kilgore*, 718 F.3d at 1058; *Coneff v. AT&T Corp.*, 673 F.3d 1155, 159-1160 (9th Cir. 2012) (*Concepcion* forecloses argument that class action waivers are unconscionable under Washington law).  As such, the class action waiver in Amazon's arbitration agreement is enforceable and precludes the plaintiffs from pursuing their claims other than on an individual basis through binding arbitration.

CONCLUSION

For the reasons set forth above, this Court should grant Amazon's motion to dismiss and compel arbitration between the plaintiffs and Amazon on an individual basis.  In the alternative, this Court should stay this Action so that it can be resolved by arbitration.

                                                          Respectfully submitted,

                                                          <u>/s/ Phillip E. Reeves</u>
Phillip E. Reeves (Fed. No. 03232)
Jennifer E. Johnsen (Fed. No. 5427)
Nicholas A. Farr (Fed. No. 11069)
Gallivan, White & Boyd, P.A.
Post Office Box 10589
Greenville, South Carolina 29603
(864) 271-9580
Fax: (864) 271-7502
preeves@gwblawfirm.com
jjohnsen@gwblawfirm.com
nfarr@gwblawfirm.com

Greenville, South Carolina

October 17, 2017

                                                      Attorneys for Defendant Amazon.com, Inc.