# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| THOMAS COREY PAYNE, and<br>KAYLA HARRIS, Individually<br>and on Behalf of All Others Similarly<br>Situated,<br><br>       PLAINTIFFS,<br><br>V.<br><br>AMAZON.COM, INC.,<br><br>       DEFENDANT.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:17-cv-2313-PMD |

## AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.     Plaintiffs Thomas Corey Payne and Kayla Harris, by counsel, individually and on behalf of all others similarly situated, bring this Amended Class Action Complaint against Defendant Amazon.com, Inc. ("Defendant" or "Amazon") and, upon information and belief and investigation of counsel, state as follows:

### PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Thomas Corey Payne is a citizen of South Carolina, residing in Charleston, which lies in Charleston County, South Carolina.

3.     Plaintiff Kayla Harris is a citizen of South Carolina, residing in Charleston, which lies in Charleston County, South Carolina.

4.     Defendant Amazon.com, Inc. is a Delaware corporation with principal executive offices in Seattle, Washington.

5.     Defendant offered the product at issue for retail sale online.

6. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and because Plaintiffs and Defendant are residents of different states and/or foreign states.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a), (b), and/or (c), because Plaintiffs suffered injuries as a result of Defendant's acts in this District, a substantial number of the events giving rise to this Complaint occurred in this District, Defendant is authorized to conduct business in this District, and Defendant has intentionally availed itself of the laws and markets of this District by conducting business in this District and contracting to supply goods in this District.

8. This Court has personal jurisdiction over Defendant because the events giving rise to this cause of action took place in this District, Defendant has sufficient minimum contacts with this District, and/or otherwise intentionally and purposefully availed itself of the privilege of conducting business in South Carolina by placing products into the stream of commerce, including the eclipse glasses at issue in the instant matter, deriving substantial revenue from goods sold and used in South Carolina, and by advertising its products and establishing retail facilities within South Carolina. Accordingly, the exercise of personal jurisdiction over Defendant complies with judicial notions of fair play and substantial justice.

## BACKGROUND AND NATURE OF THE CASE

9. This is an Amended Class Action Complaint against Amazon for damages and injunctive relief arising from Defendant's violations of South Carolina law, as well as analogous common law and consumer protection laws in each state in which it operates.

10. In addition, named Plaintiffs suffered physical injuries and bring individual claims for personal injuries.

2

11.    Amazon, an American electronic commerce and cloud-computing company, is the largest Internet retailer by total sales and market capitalization,[1] and is currently valued in excess of $465 billion dollars.[2]

12.    Amazon operates the Amazon.com website, which offers products for sale through online purchases.

13.    Upon information and belief, Amazon offers products for sale online through at least two mechanisms. In one, Amazon owns the products it offers, and then sells, charges customers, and ships these products to purchasers. In the other, for a percentage of the sales price or other price, Amazon offers, sells, charges customers, and ships products on behalf of third-party vendors.

14.    Specifically, items that are offered as "Fulfilled by Amazon" are owned by third-party vendors, but are offered for sale on Amazon.com as well as located at and shipped from an "Amazon Fulfillment Center" to Amazon customers. Further, Amazon manages all aspects of these third-party-seller products that are "Fulfilled by Amazon," including "all customer service and product returns."[3]

15.    The subject matter of this action involves various solar eclipse glasses ("Eclipse Glasses") that were marketed, sold, and warranted to the general public by Amazon to view a solar eclipse, and which, upon information and belief, were sold as both individual and multi-unit packs.

16.    Plaintiffs and members of the proposed classes include purchaser users and non-purchaser users of Eclipse Glasses, which were unfit for the purpose for which they were

---

[1] *See* https://en.wikipedia.org/wiki/Amazon.com, last accessed September 19, 2017.
[2] *See* https://ycharts.com/companies/AMZN/market_cap, last accessed September 19, 2017.
[3] *See* https://www.amazon.com/gp/help/customer/display.html/ref=help_search_2-18?ie=UTF8&nodeId=201910460&qid=1505849314&sr=2-18, last accessed September 19, 2017.

advertised and sold, and were extremely dangerous and/or defective, such that if they were used for their intended purpose, users would suffer an increased risk of eye injury, disease process, or disease and the need for diagnostic examinations to identify that injury, disease process, or disease. Named Plaintiffs would and did suffer from headaches and other physical injuries, including temporary and/or permanent vision loss and/or impairment.

17.    The unsafe Eclipse Glasses sold by Defendant were and are not usable or fit for their intended purpose, and thus they have no use or market value.

18.    Defendant knew or should have known the Eclipse Glasses were defective in design and/or manufacturing; were not fit for their intended and ordinary use; were not merchantable; and failed to perform in accordance with the advertisements, marketing materials, and warranties disseminated by Defendant, or with the reasonable expectations of ordinary consumers and users such as Plaintiffs and members of the proposed classes.

19.    In fact, on its web page entitled "About Product Safety at Amazon," Amazon provides the following assurance:

> The Product Safety Team at Amazon works to protect Amazon customers from risks of injury associated with products offered on Amazon by looking into and taking action on reported safety complaints and incidents.
>
> **Product Safety**
> Amazon monitors the products sold on our website for product safety concerns. In concerning situations, we may remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page, or take other actions depending on the situation.[4]

20.    Further, on or about August 12, 2017, Defendant, "out of an abundance of caution," sent an email to an undisclosed number of Eclipse Glasses purchasers, which, while

---

[4] *See* https://www.amazon.com/gp/help/customer/display.html?nodeId=565166. Last accessed September 25, 2017.

offering a refund to affected customers, failed to disclose either the "scale of the recall or a public list of offending vendors . . . ."[5]  PBS reported that Amazon's recall email included the following language:

> Viewing the sun or an eclipse using any other glasses or filters could result in loss of vision or permanent blindness," Amazon wrote in its email to impacted customers. "Amazon has not received confirmation from the supplier of your order that they sourced the item from a recommended manufacturer. We recommend that you DO NOT use this product to view the sun or the eclipse.[6]

21.    However, upon information and belief, Amazon had notice of the defective and unsafe nature of a number of the various Eclipse Glasses sold on Amazon.com well in advance of its August 12, 2017 email recommendation to purchasers not to use the Eclipse Glasses to view a solar eclipse.

22.    Additionally, while Defendant sent the above email to certain Eclipse Glasses purchasers, Amazon took no steps to inform, warn, or otherwise provide notice to any non-purchaser users of the defective and unsafe nature of the various Eclipse Glasses sold on Amazon.com.

23.    Upon information and belief, there are still an undisclosed number of Eclipse Glasses that have been sold by Amazon, perhaps numbering in the hundreds of thousands or more, posing a continuing risk to purchasers and users. That number will be easily ascertainable from Defendant's records.

24.    Upon information and belief, it is unknown how and by what means Amazon determined any of the glasses sold by it for viewing the August 21, 2017 total solar eclipse were safe for solar viewing.

---

[5] *See* http://www.pbs.org/newshour/rundown/amazon-recalls-potentially-hazardous-solar-eclipse-glasses/, last accessed August 22, 2017.
[6] *Id.*

5

25.     As a result of Defendant's negligence, false advertising, false marketing materials, and violation of certain statutes, Plaintiffs and members of the proposed classes suffered and continue to suffer injuries, damages, and losses from Defendant's sale of an unsafe product in violation of South Carolina law, as well as analogous common law and consumer protection laws in each state in which Defendant operates, through failing to disclose the dangers of the product as known to Defendant and failing to adequately and fully compensate consumers and users for the harms suffered.

## GENERAL FACTUAL ALLEGATIONS

26.     On August 21, 2017, the entire United States experienced a once-every-two generations event: a total eclipse of the sun by the earth's moon, also called a Solar Eclipse.[7] During a Solar Eclipse, the moon moves between the sun and the earth. When the orbital planes of both the sun and the moon are identical, the moon casts a shadow onto the earth.[8]

27.     There are three types of Solar Eclipses. The first type is a partial Solar Eclipse, which occurs when the orbital planes of the moon and the sun are not in exact alignment. In a partial Solar Eclipse, the sun will appear to have a shadow across a portion of its surface. The second type is an "annular" Solar Eclipse, which happens when the moon is farther away from the earth. In an annular Solar Eclipse, the moon in front of the sun will appear as a dark disk "on top of a larger sun-colored disk.[9]

28.     The third type, and the type relevant to the claims alleged herein, is a "total" Solar Eclipse. Total Solar Eclipses ("TSE") take place only when the sun, moon, and earth align at

---

[7] *See* Solar Eclipse 2017, https://www.nasa.gov/eclipse2017, last visited August 22, 2017.
[8] *See* Solar Eclipse 2017, https://www.nasa.gov/content/eclipses-and-transits-overview, last visited August 22, 2017.
[9] *Id.*

precisely the same time, and are generally visible only from a small area on earth by those who are in the center of the moon's shadow when it reaches the earth.

29.     During a TSE, the moon actually casts two shadows on the earth. The first shadow is known as the "umbra" and is the dark center of the moon's shadow, which gets smaller as it reaches earth. The second shadow is known as the "penumbra," which gets larger as it reaches earth. People standing in the penumbra will see a partial eclipse, while those standing in the umbra will see a TSE. All Solar Eclipses only last for a few minutes in any one location. Serious eye injury can occur when people view either a partial or TSE without certain protective eyewear.  Indeed, the NASA website warns of this danger on its Eclipse website.[10]

### The August 21, 2017 TSE

30.     The 2017 TSE is reported to have been the most viewed in history.[11]  Indeed, it has been estimated that nearly half of America's 323 million people watched or viewed the TSE, with an estimated 20 million watching from the totality, or umbra.[12]

31.     These high 2017 TSE-observer numbers (as opposed to online viewers) are as ominous as they are impressive, because watching an eclipse (*i.e.*, staring at the moon's blocking of the sun) without proper eye protection can cause permanent, irreparable eye damage.[13] The American Academy of Ophthalmology ("AAO") states unequivocally that looking directly at the sun can seriously damage your eyes. The AAO admonishes that "[s]taring at the sun for even a short time without wearing the right eye protection can damage your retina permanently."[14] Even short exposures can cause vision impairment, up to and including blindness, which is

---

[10] *Id.*
[11] *See* https://www.vox.com/science-and-health/2017/8/21/16180362/total-solar-eclipse-most-watched-in-history, last accessed August 22, 2017.
[12] *Id.*
[13] *See* https://www.aao.org/eye-health/tips-prevention/solar-eclipse-eye-safety, last accessed August 22, 2017.
[14] *Id.*

known as solar retinopathy.[15]    This potential for harm from viewing a TSE is well known to ophthalmologists and optometrists.

32.    According to a paper published by the Royal College of Ophthalmologists in the United Kingdom, symptoms of solar retinopathy typically show up approximately 12 hours after the viewing event, and can include the following symptoms:

- Blurry vision
- A central blind spot in one or both eyes
- Increased sensitivity to light
- Distorted vision
- Changes in perception of color.[16]

33.    Another injury arising from unprotected or improperly protected direct-Solar-Eclipse watching is solar keratitis, which is similar to sunburn of the cornea (the front part of the eye) and can cause eye pain and light sensitivity, with symptoms often occurring within 24 hours after exposure.[17]

34.    The AAO warns on its website that the safe way to look directly at the sun is through special purpose solar filters.[18]    This is especially true for looking at the sun directly during a TSE, and irrespective of whether one watches the TSE from its umbra or penumbra.[19] These solar purpose filters are used in "Eclipse Glasses," and must meet a stringent worldwide standard known as ISO 12312-2 (2015). Commercially available sunglasses, even with the darkest polarized lenses, do not meet ISO 12312-2 (2015) requirements and are not safe for

---

[15] *Id.*

[16] *See* https://www.cbsnews.com/news/did-the-solar-eclipse-damage-your-eyes-heres-how-to-tell/, last viewed August 22, 2017

[17] *See* https://www.washingtonpost.com/news/to-your-health/wp/2017/08/22/do-your-eyes-hurt-after-the-solar-eclipse-heres-what-you-need-to-know/?utm_term=.311047321af1, last viewed August 22, 2017.

[18] *See* https://www.aao.org/eye-health/tips-prevention/solar-eclipse-eye-safety, last accessed August 22, 2017.

[19] *Id.*

viewing Solar Eclipses.[20]    Only those glasses with lenses that meet the very stringent requirements of ISO 12312-2 (2015) are suitable for safe direct-Solar-Eclipse viewing.

35.    The popularity of the 2017 TSE created an economic boom for Eclipse Glasses makers. As of July 27, 2017, it was reported that American Paper Optics, located in Bartlett, Tennessee, had produced 37 million Eclipse Glasses, and was expecting to make and sell 100 million.[21] USA Today reported that approximately 10 million Eclipse Glasses manufactured by American Paper Optics were sold to Amazon.[22]

36.    Amazon was aware of the requirements that would make Eclipse Glasses safe to use for viewing a solar eclipse, including the TSE on August 21, 2017, and that providing unsafe and/or defective Eclipse Glasses that did not meet the requisite standards would result in eye injury and vision impairment.

37.    Upon information and belief, Amazon negligently advertised, marketed, and distributed defective, unsafe Eclipse Glasses to customers via online sales prior to the August 21, 2017 TSE. The unsafe Eclipse Glasses were not certified to meet the ISO 122312-2 (2015) standard for eye protection, and as such were defective ("Unsafe Eclipse Glasses").

38.    Amazon's August 12, 2017 email no-return necessary "recall" was tragically too little, too late. Its email notification was insufficient to timely apprise users of the defective nature of their glasses, and resulted in Plaintiffs and members of the proposed classes using unsafe and/or defective Eclipse Glasses to view the August 21, 2017 TSE without knowing that the glasses were unfit for their intended purpose.

---

[20] *Id.*
[21] *See* https://www.usatoday.com/story/tech/science/2017/07/27/solar-eclipse-2017-business-booming-makers-glasses/517129001/, last accessed August 22, 2017.
[22] *Id.*

39.     Upon information and belief, many Unsafe Eclipse Glasses sold by Amazon were sold in packs of 3 and 20 or more, and so were advertised to be and intended to be distributed to non-purchaser users. Non-purchaser users never received a warning email. Notwithstanding Amazon's woefully inadequate email notification, any and all users of Unsafe Eclipse Glasses were subjected to unreasonable and foreseeable risks of severe and permanent eye injury due to the negligence of Amazon.

40.     On or about August 1, 2017, Plaintiff Corey Thomas Payne purchased from Amazon a three-pack of Eclipse Glasses that were delivered to his home in Charleston, South Carolina on August 3, 2017. Payne gave one pair of the Eclipse Glasses to his fiancée, Kayla Harris. Both Plaintiffs used the Eclipse Glasses to view the TSE on August 21, 2017, and did not view the eclipse during any time without wearing the Eclipse Glasses.

41.     Upon information and belief, Plaintiffs did not receive notice of the recall from Amazon.

42.     Later that day, both Plaintiffs began to experience pain and discomfort, headaches, eye watering, and other symptoms. Thereafter, both Plaintiffs began to see dark spots in their line of vision, suffered vision impairment, including blurriness, a central blind spot, increased sensitivity, changes in perception of color, and distorted vision.

43.     As a direct and proximate result of Defendant's conduct in selling and distributing Unsafe Eclipse Glasses, Plaintiff Payne and the purchaser class members have suffered the economic loss of purchasing Unsafe Eclipse Glasses sold by Defendant that are not usable or fit for their intended purpose and so have no use or market value.

44.     As a direct and proximate result of Defendant's conduct in selling and distributing Unsafe Eclipse Glasses, Plaintiff Harris and the non-purchaser class members who used the

Unsafe Eclipse Glasses have suffered a significant increased risk of eye injury, disease process, or disease, requiring an award of the cost of a program for diagnostic testing for the early detection of such eye injury, disease process, or disease resulting from exposure to the sun caused by Defendant's Unsafe Eclipse Glasses. Reasonable medical procedures exist for the early detection of eye injury, disease process, and disease caused by exposure to the sun as a result of the use of Defendant's Unsafe Eclipse Glasses. Early detection of injury, disease process, or disease resulting from exposure to the sun caused by the use of Defendant's Unsafe Eclipse Glasses will benefit Plaintiffs and class members.

45.    Named Plaintiffs have and will experience eye injury ranging from temporary discomfort to varying degrees of vision impairment, which will affect their quality of life and make it necessary for them to have their eyes tested, evaluated, and monitored by eye specialists.

46.    Amazon's Conditions of Use contain a choice of law provision favoring Washington law in disputes between Amazon and consumers ("Choice of Law").

47.    Amazon's choice of law provision is substantively unconscionable because its enforcement would allow Amazon to contractually shield itself from any liability arising from disputes with consumers.

48.    Amazon's choice of law provision is procedurally unconscionable because it is not disclosed to consumers until check-out, and only then by prompting acceptance to its Conditions of Use without displaying the individual terms contained therein.

49.    Because Amazon's choice of law provision is unconscionable, and therefore unenforceable, this Court should apply South Carolina choice of law rules in determining the law applicable to the purchaser user claims. Amazon's choice of law provision has no applicability to the non-purchaser user claims.

11

## CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated as permitted by Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3) and (c)(4). Plaintiffs are informed and believe that there are at least thousands in the proposed Class. The proposed Class consists of:

> All individual citizens of the United States who, on or before August 21, 2017, purchased or used Unsafe Eclipse Glasses from Amazon.com for viewing of the August 21, 2017 Total Solar Eclipse.

> Subclass A:

> All individual residents of the United States who, on or before August 21, 2017, purchased Unsafe Eclipse Glasses from Amazon.com and used the glasses for viewing the August 21, 2017 Total Solar Eclipse (the "Purchaser User Subclass").

> Subclass B:

> All individual residents of the United States who used Unsafe Eclipse Glasses from Amazon.com for viewing the August 21, 2017 Total Solar Eclipse that they did not purchase (the "Non-Purchaser User Subclass").

51.    Excluded from the Class are the following:

      a.    Defendant and any entities in which Defendant has controlling interest;

      b.    Any entities in which Defendant's officers, directors, or employees are employed, and any of Defendant's legal representatives, heirs, successors, or assigns;

      c.    The judge and any other judicial officer to whom this case is assigned and any member of the judge's any judicial officer's immediate family;

      d.    All persons or entities that properly execute and timely file a request for exclusion from the Class;

      e.    Any attorneys representing the Plaintiffs or the Class.

52.    Plaintiffs reserve the right to modify or amend the Class definition if discovery and further investigation reveals that the Class should be expanded, divided into additional subclasses, or modified in any way.

53.    A class action is the proper form or action in which to bring Plaintiffs' claims. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

54.    This action satisfies all requirements of FRCP 23(a), (b)(1), and (b)(3), including numerosity, commonality, typicality, adequacy, predominance, and superiority.

55.    **Numerosity and Ascertainability:** The Class is so numerous that joinder of all members is impracticable. While the exact number is unknown at this time, it is generally ascertainable by appropriate discovery, and based upon the Defendant's sales volume, communications with customers, and other information, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. Moreover, information in Defendant's records will establish or assist in establishing the names and addresses of Class members and the size of the Class. The disposition of the Class members' claims in a single action will provide substantial benefits to all parties and to the Court.

56.    **Commonality:** The claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class-wide litigation. Resolution of common questions of law and fact will not turn on the individual behavior of Class members, but rather on Defendant's standardized conduct. These shared questions predominate over individual questions, and they include, without limitation:

13

a.      Whether the Eclipse Glasses were unsafe and/or defective;

b.      Whether Defendant knew or should have known the Eclipse Glasses were unsafe and/or defective;

c.      Whether Defendant had a duty to distribute and sell the Eclipse Glasses such that they were neither defective nor unreasonably dangerous when used as intended;

d.      Whether Defendant owed a duty to inspect the Eclipse Glasses it distributed to Plaintiffs and Class members;

e.      Whether Defendant inspected the Eclipse Glasses before marketing and distributing them to Plaintiffs and Class members;

f.      Whether Defendant's inspection of any glasses sold on the Amazon.com website for the purpose of viewing the August 21, 2017 TSE was adequate;

g.      Whether Defendant failed to adequately warn Eclipse Glasses purchasers of the defective nature of the glasses;

h.      Whether Defendant owed duties to Plaintiffs and the Class members, the scope of those duties, and whether those duties were breached;

i.      Whether Defendant made warranties to Plaintiffs and the Class members, the scope of those warranties, and whether those warranties were breached;

j.      Whether Defendant owed a duty to warn all purchasers of any Eclipse Glasses sold by Amazon on its website not to use them for viewing solar eclipses;

k.      Whether Defendant owed a duty to notify or warn all purchasers and users of any Eclipse Glasses sold by Amazon on its website not to use them for viewing solar eclipses;

l.     Whether Defendant's efforts to recall the Eclipse Glasses and/or prevent use of the Eclipse Glasses were adequate;

m.     Whether Defendant's conduct constitutes violation of the laws asserted herein;

n.     The extent of damages caused by Defendant's acts and omissions; and

o.     Whether Plaintiffs and the Class members are entitled to injunctive or declaratory relief.

57.     **Typicality:** Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, have been damaged by Defendant's negligent and/or reckless conduct. Plaintiffs incurred losses and injuries relating to the purchase or use of Eclipse Glasses in that they did not get the benefit of the bargain or get what they paid for. Further, the factual bases of Defendant's misconduct are common to all Class members and represent a common thread of misconduct resulting in injury to all Class members.

58.     Plaintiffs' claims are further typical of other Class members because Plaintiffs make the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant for injuries, damages, and losses suffered due to the purchase and/or use of unsafe or defective Eclipse Glasses.

59.     **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class members because Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Class members. Plaintiffs seek no relief that is antagonistic or adverse to the Class members, and the damages Plaintiffs suffered are typical of other Class members. Further, Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving unfair, false, misleading, and deceptive

advertising. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and they have the financial resources to do so.

60.     **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved, because Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. Class action treatment is superior to all other available adjudication methods because it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate their claims against Defendant, one of the largest online retailers in the world. Further, individual litigation would be an economically impractical alternative even for those Class members who could afford to litigate their claims. Class action treatment will achieve one of the primary purposes of the class action mechanism, enhancing the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.

61.     The nature of this action and the laws available to Plaintiffs and the Class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class members for the wrongs alleged for the following reasons: (1) otherwise, Defendant would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; (2) the costs of individual suits could unreasonably consume the amounts that would be recovered; (3) proof of a common

course of conduct by which Plaintiffs were exposed to an inherently defective and extremely dangerous product resulting in injuries and damages is representative of the experience of Class members and will establish the right of each Class member to recover on the causes of action alleged; and (4) individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

62.    Class-wide declaratory, equitable, and injunctive relief is appropriate pursuant to Rule 23(b)(1) and/or (b)(2) because Defendant has acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Defendant's liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests. Class-wide relief assures fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in Defendant's duties to perform corrective action.

## FIRST CAUSE OF ACTION
## VIOLATION OF S.C. CODE ANN. § 39-5-10, ET SEQ.
## SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

63.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

64.    Plaintiffs assert this cause of action individually and on behalf of themselves only.

65.    The South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq*., declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

66.    Plaintiffs are consumers, purchasers, or other persons entitled to the protection of the SCUTPA.

67.    Defendant violated and continues to violate the SCUTPA by engaging in the

unconscionable, deceptive, and unfair acts or practices described above. Defendant's practices were likely to, and did in fact, deceive and mislead members of the public, including Plaintiffs, acting reasonably under the circumstances to their detriment. These practices include, but are not limited to, Defendant's use of false or misleading representations or omissions of material fact in connection with the marketing, advertising, promotion, and sale of unsafe and/or defective Eclipse Glasses to consumers.

68.    Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce by, *inter alia*, offering and selling Unsafe Eclipse Glasses that were advertised as being certified as ISO Standard 12312-2 (2015) compliant and safe for viewing a TSE, but were, in fact, not certified as compliant with ISO Standard 12312-2 (2015), and were defective, unfit, and unsafe for viewing solar eclipses.

69.    Plaintiffs dispute the adequacy, timeliness, and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the unsafe and/or defective Eclipse Glasses resulted in foreseeable and preventable harm to consumers and users, including Plaintiffs.

70.    In connection with the sale of the defective product to Plaintiffs, Defendant, through its employees, agents, and representatives, violated the SCUTPA by engaging in unfair or deceptive acts or practices, failing to disclose the dangerous design and/or manufacturing defect of the product, and failing to adequately and fully compensate Plaintiffs.

71.    As a direct and proximate result of unfair and/or deceptive acts or practices, Plaintiffs were damaged and suffered injuries resulting from the dangerous design and/or manufacturing defect of the product described herein.

72.     By reason of such violations and pursuant to the SCUTPA, Plaintiffs are entitled to recover all of the monies paid for the defective products, to be compensated for the lost value arising out of the use of the product, and to recover any and all consequential damages recoverable under the law including, but not limited to, exposure to a dangerous and defective product, medical expense, the cost of diagnostic testing, past and future lost wages, and other losses.

73.     Plaintiffs are entitled to equitable relief, including restitutionary disgorgement of monies unfairly, deceptively, and/or unlawfully collected by Defendant and an injunction prohibiting Defendant from engaging in the same or similar practices described herein in the future.

74.     Pursuant to the SCUTPA, Plaintiffs are entitled to compensatory damages, treble damages, attorneys' fees, and costs of this suit.

## SECOND CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER
## PROTECTION STATUTES

75.     Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

76.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

77.     Defendant engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection statutes listed below. The direct and proximate result of Defendant's misrepresentations and unlawful course of conduct was the inducement of Plaintiff Payne and the Purchaser User Subclass members to purchase unsafe and/or defective Eclipse Glasses from Defendant.

78.    In connection with the sale of the defective product to Plaintiff Payne and the Purchaser User Subclass members, Defendant, through its employees, agents, and representatives, violated state consumer protection statutes by engaging in unfair or deceptive acts or practices, failing to disclose the unsafe and/or defective design and/or misbranding of the product, and failing to adequately and fully compensate consumers and users.

79.    Plaintiffs and Class members dispute the adequacy, timeliness, and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the unsafe and/or defective Eclipse Glasses resulted in foreseeable and preventable harm to Plaintiffs and Class members.

80.    Defendant intended that Plaintiffs and Class members would rely on their materially deceptive practices, and that Plaintiff Payne and the Purchaser User Subclass members would purchase Unsafe Eclipse Glasses from Defendant as a consequence of the deceptive practices, including Defendant's false advertising, misrepresentations, and omissions of material facts regarding the safety of the product for its intended use. Plaintiffs and Class members were deceived by Defendant's misrepresentations, which constitute unfair and deceptive acts and practices.

81.    As a direct and proximate result of unfair and/or deceptive acts or practices, Plaintiff Payne and Purchaser User Subclass members suffered an ascertainable loss, in that they paid for a product that they would not have purchased had Defendant not engaged in unfair and deceptive conduct. Plaintiffs and Class members suffered injuries, damages, and losses resulting from the dangerous design and/or misbranding and false advertising of the product described herein. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendant's conduct.

82.     Under the statutes listed herein to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, Defendant is the supplier, advertiser, and seller that is subject to liability for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

83.     By engaging in the foregoing conduct, Defendant violated the following states' unfair and deceptive trade practices and consumer protection laws:

     a.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

     b.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

     c.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. § 4-88-101, *et seq.*;

     d.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*;

     e.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

     f.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

     g.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6, § 2511, *et seq.*;

     h.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code Ann. § 283901, *et seq.*;

     i.     Defendant have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

     j.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. §10-1-392, *et seq.*;

     k.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

l.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code Ann. § 48-601, *et seq*.;

m.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5-1, *et seq*.;

n.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq*.;

o.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. Ann. § 367.110, *et seq*.;

p.       Defendant has engaged in unfair competition or unfair deceptive acts or practices in violation of La. Stat. Ann. § 51:1401, *et. seq*.;

q.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Me. Rev. Stat. tit. 5 § 207, *et seq*.;

r.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code, Com. Law § 13-101, *et seq*.;

s.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq*.;

t.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq*.;

u.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, *et seq*.;

v.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.010, *et seq*.;

w.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq*.;

x.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*.;

y.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq*.;

z.       Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A: 1, *et seq*.;

aa.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat.§ 57-12-1, *et seq*.;

bb.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.;

cc.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq*.;

dd.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq*.;

ee.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq*.;

ff.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. 15 § 751, *et seq*.;

gg.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq*.;

hh.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Cons. Stat. § 201-1, *et seq*.;

ii.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 R.I. Gen Laws § 6-13.1-1, *et seq*.;

jj.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq*.;

kk.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, *et seq*.;

ll.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq*.;

mm.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, *et seq*.;

nn.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9 § 2451, *et seq*.;

oo.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. § 59.1-196, *et seq*.;

pp.     Defendants has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq*.;

qq.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq*.;

rr.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.18, *et seq*.; and

ss.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. Ann. § 40-12-101, *et seq*.

84.     As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiffs and Class members are entitled to compensatory damages, treble damages, attorneys' fees, and costs of this suit as permitted by the applicable state statute.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF UNIFORM DECEPTIVE TRADE PRACTICES ACTS

85.     Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

86.     Plaintiffs assert this claim for violations of the Uniform Deceptive Trade Practices Act ("UDTPA"), which prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, … uses, [or] benefits … that they do not have," on behalf of all Class members who reside in the twenty-three states that have enacted these provisions of the UDTPA.

87.     Defendant engaged in deceptive trade practices in violation of the twenty-three state consumer protection statutes that incorporate the provisions of the UDTPA quoted above by, *inter alia*, failing to provide a safe product and/or a product free from inherent defect; failing to properly warn consumers and users of the inherent dangers of the product; inadequately testing the product before placing the product into interstate commerce; and failing to provide a product that would meet the reasonable expectations of the ordinary consumer as to its safety. The unsafe and/or defective Eclipse Glasses were under the exclusive control of Defendant prior

to sale, and Defendant had a duty to warn purchasers of the dangers posed by the product in an effective manner.

88.     Plaintiffs dispute the adequacy, timeliness, and efficacy of any and all refund and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the unsafe and/or defective Eclipse Glasses resulted in foreseeable and preventable harm to Plaintiffs and Class members.

89.     The kinds of harm that befell Plaintiffs and Class members were foreseeable results of the defects in the product as alleged herein. Neither Plaintiffs nor Class members had any reason to know, prior to or at the time of purchase, or at any time prior to their injuries, that the Unsafe Eclipse Glasses were defective, harmful, and dangerous to consumers and users.

90.     Defendant has violated the deceptive trade practices statutes of the following states that incorporate the provisions of the UDTPA quoted above:

        a.     Defendant has engaged in deceptive trade practices in violation of Ala. Code § 8-19-5, *et seq.*;

        b.     Defendant has engaged in deceptive trade practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

        c.     Defendant has engaged in deceptive trade practices in violation of Cal. Civ. Code § 1770, *et seq.*;

        d.     Defendant has engaged in deceptive trade practices in violation of Del. Code tit. 6 § 2532, *et seq.*;

        e.     Defendant has engaged in deceptive trade practices in violation of Ga. Code Ann. §§ 10-1-372, *et seq.*, 10-1-393, and 26-2-29 *et seq.*;

        f.     Defendant has engaged in deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3, *et seq.*;

        g.     Defendant has engaged in deceptive trade practices in violation of Idaho Code § 48-603, *et seq.*;

h.      Defendant has engaged in deceptive trade practices in violation of 815 Ill. Comp. Stat. § 510/2, *et seq*.;

i.      Defendant has engaged in deceptive trade practices in violation of Me. Rev. Stat. Ann. Tit. 10 § 1212, *et seq*.;

j.      Defendant has engaged in deceptive trade practices in violation of Mich. Comp. Laws Ann. § 445.903, *et seq*.;

k.      Defendant has engaged in deceptive trade practices in violation of Minn. Stat. Ann. § 325D.44, *et seq*.;

l.      Defendant has engaged in deceptive trade practices in violation of Miss. Code Ann. § 75-24-5, *et seq*.;

m.      Defendant has engaged in deceptive trade practices in violation of Neb. Rev. Stat. §§ 81-2,285, *et seq.* and 87-302, *et seq*.;

n.      Defendant has engaged in deceptive trade practices in violation of N.H. Rev. Stat. § 358-A:2, *et seq*.;

o.      Defendant has engaged in deceptive trade practices in violation of N.M. Stat. Ann. § 57-12-2, *et seq*.;

p.      Defendants have engaged in deceptive trade practices in violation of Ohio Rev. Code § 4165.02, *et seq.*;

q.      Defendants have engaged in deceptive trade practices in violation of Or. Rev. Stat. § 646.608, *et seq.*;

r.      Defendants have engaged in deceptive trade practices in violation of 10 Penn. Stat. § 162.15, *et seq.* and 73 Penn. Stat. § 201-2, *et seq.*;

s.      Defendant has engaged in deceptive trade practices in violation of R.I. Gen. Laws § 6-13-1.1, *et seq*.;

t.      Defendant has engaged in deceptive trade practices in violation of Tenn. Code Ann. § 47-18-104, *et seq*.;

u.      Defendant has engaged in deceptive trade practices in violation of Tex. Bus. & Comm. Code § 17.46, *et seq*.;

v.      Defendant has engaged in deceptive trades practices in violation of Utah Code § 13-11a-3, *et seq*.;

w.    Defendant has engaged in deceptive trade practices in violation of W.Va. Code § 46A-6-102, *et seq.*

91.    As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiffs and Class members are entitled to compensatory damages, treble damages, attorneys' fees, and costs of this suit as permitted by the applicable state statute.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE

92.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

93.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

94.    Defendant owed a duty of care to Plaintiffs and Class members to distribute and sell Eclipse Glasses in such a way that they were neither unreasonably dangerous nor defective when used as intended; to inspect and ensure the glasses that it provided were in fact safe; to warn of any post-sale defects discovered in its products; and to recall dangerous products. Defendant owed a duty to Plaintiffs and Class members to use reasonable care to provide true, reliable, and safe information regarding the Eclipse Glasses.  Defendant undertook a duty to reasonably communicate about the safety of the glasses to Plaintiffs and Class members.

95.    Defendant knew that viewing the August 21, 2017 TSE without proper eye protection would result in an increased risk of eye injury, disease process, or disease to Plaintiffs and Class members, particularly in light of the extensive media coverage prior to and surrounding the August 21, 2017 TSE.

96.    Defendant knew or had reason to know that Plaintiffs and Class members, as consumers and members of the general public for whom the Unsafe Eclipse Glasses alleged

herein were placed into interstate commerce, would be likely to use the Unsafe Eclipse Glasses to view the August 21, 2017 TSE.

97.     Defendant knew or reasonably should have known of the danger associated with Plaintiffs and Class members' foreseeable use of the Unsafe Eclipse Glasses to view a solar eclipse, which danger would not be obvious to the general public.

98.     Plaintiffs and Class members dispute the adequacy, timeliness, and efficacy of any and all notice, refund, and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to notify or to recall the unsafe and/or defective Eclipse Glasses resulted in foreseeable and preventable harm to Plaintiffs and Class members.

99.     Defendant breached its duties by selling and distributing Eclipse Glasses that were unsafe and/or defective, misbranded, and unfit for their intended use, resulting in physical injury, including, but not limited to, temporary and/or permanent blindness.

100.    As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs and Class members have suffered injuries, damages, and losses including, but not limited to, those described in Paragraphs 43, 44, and 45 above.

101.    Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiffs and Class members are entitled to an award of exemplary and punitive damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

102.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

103.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

104.    Defendant gave false information that the Eclipse Glasses it advertised, marketed, distributed, and sold to consumers were safe and effective for their intended use.

105.    Plaintiffs and Class members relied upon Defendant's express and implied representations that the Eclipse Glasses were safe for use in viewing the August 21, 2017 TSE.

106.    It was reasonable for Plaintiffs and Class members to rely on the representations communicated by Defendant as to the safety and efficacy of the Eclipse Glasses.

107.    As a result of Plaintiffs' reliance on Defendant's representations, Plaintiffs and Class members, believing it was safe, used the Unsafe Eclipse Glasses to observe the August 21, 2017 TSE, resulting in increased, dangerous exposure to the sun during the TSE.

108.    As a direct and proximate result of Plaintiffs' and Class members' reliance on Defendant's negligent misrepresentations, Plaintiffs and Class members have suffered and will continue to suffer injuries, damages, and losses including, but not limited to, those described in Paragraphs 43, 44, and 45 above. Accordingly, Defendant is liable to Plaintiffs and Class members for compensatory damages.

## SIXTH CAUSE OF ACTION
## NEGLIGENT FAILURE TO WARN

109.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

110.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

111.    Defendant knew or should have known that the Unsafe Eclipse Glasses it advertised, marketed, distributed, and sold were not safe for the protection of eyes while viewing a solar eclipse.

112.    Defendant failed to warn Plaintiffs and Class members that the Eclipse Glasses they purchased or used were unsafe and/or defective for the protection of their eyes while viewing the TSE.

113.    Plaintiffs and Class members dispute the adequacy, timeliness, and efficacy of any and all notice, refund, and/or recall efforts implemented by Defendant. The inadequacy of Defendant's efforts to recall the unsafe and/or defective Eclipse Glasses resulted in foreseeable and preventable harm to Plaintiffs and Class members.

114.    As a direct and proximate result of Defendant's failure to warn of the unsafe and/or defective nature of the Eclipse Glasses Defendant advertised, marketed, distributed, and sold, Plaintiffs and Class members have suffered and will continue to suffer injuries, damages, and losses including, but not limited to, those described in Paragraphs 43, 44, and 45 above. Accordingly, Defendant is liable to Plaintiffs and Class members for compensatory and other damages.

<u>SEVENTH CAUSE OF ACTION</u>
<u>BREACH OF WARRANTY</u>

115.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

116.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

117.    Defendant, by and through the sale of the Eclipse Glasses, impliedly warranted to Plaintiffs and Class members that the Unsafe Eclipse Glasses were of merchantable quality and fit for their ordinary, intended, and foreseeable use.

118.    Plaintiffs and Class members used the Unsafe Eclipse Glasses in reliance on Defendant's implied warranties and in the ordinary, intended, and foreseeable manner in which the Unsafe Eclipse Glasses were to be used.

119.    Defendant breached these implied warranties because the Unsafe Eclipse Glasses were unmerchantable and unsafe, defective, and/or unfit for their ordinary, intended, and foreseeable use.

120.    Defendant's breach of implied warranties resulted in Plaintiff's and Class members' use of an unreasonably dangerous and defective product, placing Plaintiff's and Class members' health and safety in jeopardy.

121.    Plaintiffs and Class members have incurred injuries, damages, and losses as a direct and proximate result of Defendant's breach of implied warranties.

122.    Plaintiffs and Class members are entitled to an award of damages for their injuries, including a refund to Plaintiff Payne and the Purchaser User Subclass of the purchase price paid for the product, consequential damages, and incidental damages.

**EIGHTH CAUSE OF ACTION**
**RULE 23(B)(2) INJUNCTIVE RELIEF**

123.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

124.    In addition to or in the alternative to the above, Plaintiffs, individually and on behalf of the Class, bring this class action under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class as a whole, such that final injunctive or declaratory relief is appropriate with respect to the Class as a whole.

125.    Such injunctive relief includes, but is not limited to, an order requiring Defendant to give direct notice to purchasers of the Unsafe Eclipse Glasses and public notice to non-purchasers who were given the Unsafe Eclipse Glasses by purchasers of the Unsafe Eclipse Glasses of their unsafe properties; an order requiring Defendant to cease and desist from

engaging in the unlawful, unfair, and/or deceptive practices alleged in the Amended Complaint; and injunctive relief to remedy Defendant's past conduct.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT

126.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

127.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

128.    Plaintiff Payne and the Purchaser User Subclass members conferred a monetary benefit on Defendant.  Specifically, Plaintiff Payne and the Purchaser User Subclass members purchased the Unsafe Eclipse Glasses from Defendant and provided Defendant with payment.

129.    Defendant knew that Plaintiff Payne and the Purchaser User Subclass members conferred a benefit on Defendant, and Defendant profited from the purchases.

130.    As described above, Defendant sold the Unsafe Eclipse Glasses even though the glasses were defective and/or unsafe for the purpose for which they were sold.  Defendant failed to disclose the nature of the defect at the point of sale or properly warn of the defect after the sale.

131.    If Plaintiff Payne and the Purchaser User Subclass members had known that the Eclipse Glasses were defective and/or not safe for the purpose of viewing a solar eclipse, they would not have purchased the Unsafe Eclipse Glasses from Defendant.

132.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff Payne and the Purchaser User Subclass members conferred on it.

133.    The retention by Defendant of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

134.    Plaintiffs and Class members are entitled under the laws of their respective states to restitution of the profits unjustly obtained by Defendant, plus interest.

135.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts paid by Plaintiff Payne and the Purchasing User Subclass members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members pray for relief and judgment against Defendant, as follows:

a.    For an order certifying the proposed Classes, appointing Plaintiffs and counsel to represent the proposed Classes, and notice to the proposed Class to be paid by Defendant;

b.    For damages suffered by Plaintiffs and Class members;

c.    For restitution to Plaintiffs and Class members of all monies wrongfully obtained by Defendant;

d.    For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Amended Complaint;

e.    An order awarding declaratory relief and retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.    For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g.    For Plaintiffs' costs incurred;

h.    For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.    For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

Dated: December 14, 2017                    Respectfully Submitted,

**MCGOWAN, HOOD & FELDER, LLC**


_s/ James L. Ward, Jr._
James L. Ward, Jr.
Fed. ID No. 6956
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
Telephone: (843) 388-7202
Facsimile: (843) 388-3194
jward@mcgowanhood.com

Jasper D. Ward IV
Ashton Rose Smith
**JONES WARD PLC**
The Pointe
1205 E. Washington St., Suite 111
Louisville, Kentucky 40206
Telephone: (502) 882-6000
Facsimile: (502) 587-2007
jasper@jonesward.com
ashton@jonesward.com

Steven W. Teppler
Florida Bar Number 14787
**ABBOTT LAW GROUP, P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: (904) 292-1111
Facsimile: (904) 292-1220
steppler@abbottlawpa.com

Kevin S. Hannon
Colorado State Bar No. 16015
**THE HANNON LAW FIRM, LLC**
1641 Downing Street
Denver, CO 80218
Telephone: (303) 861-8800
Facsimile: (303) 861-8855
khannon@hannonlaw.com

Jean Sutton Martin*
North Carolina Bar #25703
**LAW OFFICE OF JEAN SUTTON
MARTIN PLLC**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
jean@jsmlawoffice.com

*Counsel for Plaintiffs and the Class*

December 14, 2017
Mt. Pleasant, SC

*pro hac vice application forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 14, 2017, I filed the foregoing Amended Class Action Complaint via CM/ECF, which caused the foregoing to be served on all parties or their counsel of record who have entered appearances in this matter.

<u>*s/ James L. Ward, Jr.*</u>
James L. Ward, Jr.