# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Thomas Corey Payne and Kayla Harris, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiffs, ) ) | C.A. No. 2:17-cv-2313-PMD |
| v. ) ) | **ORDER** |
| Amazon.com, Inc., ) ) | |
| Defendant. ) ) | |

This matter is before the Court on Defendant Amazon.com's motion to compel arbitration, or in the alternative, to stay or dismiss (ECF No. 31). For the reasons stated herein, the Court grants the motion to compel arbitration, and dismisses this case without prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

This putative class action and personal injury case arises out of Plaintiffs' purchase and use of specialty sunglasses to view a total solar eclipse on August 21, 2017. Plaintiffs' glasses were purchased from Defendant Amazon.com ("Amazon"), an online retailer. To make a purchase through Amazon, customers are required to agree to Amazon's Conditions of Use, which contain an arbitration agreement and a waiver of one's right to bring a class action. Specifically, the Conditions of Use require arbitration of "[a]ny dispute or claim relating in any way to [a customer's] use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com." (Def. Amazon.com, Inc's Mem. Supp. Mot. Compel Arbitration, ECF No. 31-1, at 3.)

1

Prior to the eclipse, experts warned that viewing a solar eclipse without special protective eyewear can be dangerous and lead to permanent eye damage. Experts recommended wearing glasses with an International Organization for Standardization rating of ISO 12312-2 during eclipse viewing. On or about August 1, 2017, Plaintiff Thomas Corey Payne purchased from Amazon a pack of three glasses indicating they were designed for viewing an eclipse. On August 12, Amazon emailed purchasers of eclipse glasses to notify them that it could not confirm that the glasses were safe and thus recommended against using them to view the upcoming eclipse. Plaintiffs allege they did not receive such an email. Payne gave a pair of these eclipse glasses to his fiancé, Plaintiff Kayla Harris. Both Plaintiffs wore their glasses while observing the August 21 eclipse. Later that day, Plaintiffs experienced discomfort, headaches, eye watering, distorted vision, and other symptoms associated with looking at the sun without proper eye protection.

Plaintiffs filed suit on August 29, 2017, alleging that Amazon negligently advertised, marketed, and distributed glasses that did not meet the ISO 12312-2 standard and were not safe to use to view an eclipse. Plaintiffs further allege that the email warning was insufficient to timely warn customers, and that many users of glasses never received a warning since the glasses—often sold in packs of many pairs—were distributed to many people who did not personally purchase them from Amazon. Plaintiffs also allege that Amazon violated the South Carolina Unfair Trade Practices Act, forty-five other state consumer protection statutes, and the Uniform Deceptive Trade Practices Act as codified by twenty-three states. Plaintiffs bring their

claim on behalf of all United States residents who purchased or used unsafe eclipse glasses from Amazon before August 21, 2017.[1]

On January 29, 2018, Amazon moved to compel arbitration, or in the alternative, to stay pending arbitration, or else dismiss claims under Rules 12(b)(6) and 12(b)(2). Plaintiffs responded on February 28, and Amazon replied on March 28. Accordingly, Amazon's motion is ripe for consideration.

## DISCUSSION

Amazon argues that the individual plaintiffs' claims are subject to arbitration. In the alternative, it argues those claims are subject to dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the alternative, it argues that the class allegations should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Because the Court agrees that individual Plaintiffs' claims are subject to arbitration, it does not address Amazon's alternative motions. The Court first addresses the parties' dispute about which law the Court must apply to the arbitration agreement, then turns to the applicability of that agreement.

### I.     Choice of Law Provision

Amazon's Conditions of Use include a provision specifying that disputes between customers and Amazon are subject to the law of the state of Washington, as well as federal law and the Federal Arbitration Act. Plaintiffs argue that Amazon's Conditions of Use, including the arbitration provision, must be analyzed under South Carolina law. Amazon argues that the

---

1.     Plaintiffs have not yet sought class certification.

Washington choice of law provision is valid, and also that the arbitration clause is valid whether the Conditions of Use are analyzed under Washington or South Carolina law.

To determine whether the choice of law provision is valid, the Court must apply the choice of law rules of the forum state—South Carolina. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). "South Carolina law looks favorably on choice of law clauses and enforces them except in unusual circumstances." *Synthes USA, LLC v. Davis*, No. 4:17-cv-2879-RBH, 2017 WL 5972705, at *4 (D.S.C. Dec. 1, 2017) (citing *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011)). "[A] choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). Additionally, if a court "finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result." *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 667 (S.C. 2007). "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id.* at 668.

Plaintiffs argue that the Washington choice of law provision is against South Carolina public policy because the Conditions of Use include unconscionable provisions, and they suggest that these unconscionable terms would invalidate either the entire contract or the arbitration agreement. Plaintiffs are not precise about which portions of the Conditions of Use render it unconscionable, but they cite *Smith v. D.R. Horton, Inc.*, 790 S.E.2d 1, 4–5 (S.C. 2016), for the

4

notion that a damages limitation may render an arbitration agreement unconscionable and therefore unenforceable.  In *Smith*, the South Carolina Supreme Court first determined which portions of the contract it would look to in order to determine the validity of the arbitration agreement.  *Id.* at 4.  The court explained that a party challenging an arbitration agreement "must allege that the *arbitration agreement* is unconscionable, not that the *entire contract* is unconscionable."  *Id.*  The court concluded that a paragraph titled "Warranties and Dispute Resolution" was the arbitration agreement since it had to be read as a whole to determine how disputes would be handled and since its subparagraphs "contain[ed] numerous cross-references to one another, intertwining the subparagraphs so as to constitute a single provision."  *Id.*  Next, the court turned to whether the arbitration agreement was unconscionable.  The court held that it was because the plaintiffs, buyers of a new home from a homebuilding company, lacked a meaningful choice, and because the agreement's disclaimers were "one-sided and oppressive." *Id.* at 5.  Specifically, the court explained that the arbitration agreement provided that the only remedy for a defect in the home was repair or replacement at the discretion of the homebuilder, and that it prohibited money damages.  Such a provision is "no remedy at all because it leaves the relief to the whim of [defendant]."  *Id.*

      Plaintiffs imply that Amazon's limitation of liability provision renders the arbitration agreement unenforceable, just like the disclaimers found to be oppressive in *Smith*.  The Court disagrees.  First, unlike the agreement in *Smith*, Amazon's limitation of liability is in a separate paragraph with a separate heading from the paragraph that requires arbitration of all disputes. These paragraphs are adjacent, but they do not contain any cross-references such that the Court must read them together, as a whole, to understand how the Conditions of Use govern disputes.

Plaintiffs essentially argue that one provision (the liability limitation) renders a different provision (the arbitration agreement) unconscionable. This runs afoul of the principle the South Carolina Supreme Court reiterated in *Smith*: a party challenging an arbitration agreement "must allege that the *arbitration agreement* is unconscionable, not that the *entire contract* is unconscionable."[2] *Id.* at 4. Moreover, Plaintiffs fail to explain how the liability limitation invalidates the Washington choice of law provision, which is separate from both the liability limitation and the arbitration agreement. In short, nothing in *Smith* suggests that the Washington choice of law provision is against South Carolina public policy.

Second, Plaintiffs assert that the choice of law provision is unconscionable because Plaintiffs lacked a meaningful choice in agreeing to it and because it is oppressive and one-sided. While the Court agrees that Plaintiffs can establish some of the factors tending to show a lack of a meaningful choice, *see Simpson*, 644 S.E.2d at 669–70, the Court finds that the choice of law provision is not oppressive or one-sided. Plaintiffs bear the burden of establishing unconscionability, *Ortberg v. Holiday Kamper Co. of Columbia*, No. 2:10-cv-962-CWH, 2011 WL 1883853, at *3 (D.S.C. May 17, 2011), and they present only one reason that the choice of law provision is oppressive or one-sided. Plaintiffs correctly note that in *Simpson*, the South Carolina Supreme Court held an arbitration agreement was oppressive in part because it

---

2. The Court finds that Plaintiffs' case is distinguishable from *Smith* on other grounds as well. For example, the limitation of liability provision states, "To the full extent permissible by law, Amazon will not be liable . . . ." (Resp. in Opp'n, Ex. B, Disclaimer of Warranties, ECF No. 39-2, at 1.) Thus, by its terms, the limitation of liability provision is only as broad as applicable law allows. This makes the provision significantly less onerous than the disclaimers in *Smith*. In light of this limitation, the Court does not find the limitation on liability to be so oppressive that no reasonable person would agree to it. Even if it were so oppressive, the Conditions of Use contain a severability clause such that the limitation of liability could be severed from the arbitration agreement and the choice of law provision. *See One Belle Hall Prop. Owners Ass'n, Inc. v. Trammell Crow Residential Co.*, 791 S.E.2d 286, 293 (S.C. Ct. App. 2016) (applying a severability clause where portions of a contract were alleged to be unconscionable). Thus, to the extent that Plaintiffs suggest that the liability limitation is not severable under South Carolina law, they are incorrect.

specifically denied the plaintiff the right to recover treble damages, though a court would be required to award them if it found for her under the South Carolina Unfair Trade Practices Act (SCUTPA).  644 S.E.2d at 670–71.  Plaintiffs argue that since they could not recover under SCUTPA under Washington law, the Conditions of Use are similarly unconscionable. Plaintiffs' argument equates an unconscionable waiver of statutory rights, like that in *Simpson*, with the "waiver" of one state's statues in favor of those of another state.  That comparison is in error.  A choice of law provision is not a waiver of statutory rights; it is a substitution of one state's regulations for another's.  While it is true that Plaintiffs cannot recover under SCUTPA under Washington law, they are still able to recover under Washington statutes that protect consumers, including any that might mandate treble damages.  It may be the case that South Carolina law provides Plaintiffs with an opportunity for a greater damages award, but that does not make Washington law oppressive.  Since Plaintiffs have not established that the Washington choice of law provision is oppressive, the Court finds that it is not unconscionable.

Since Plaintiffs have not presented an unusual circumstance that justifies invalidating the choice of law provision, the Court follows the usual presumption in favor of enforcement and evaluates the arbitration agreement under Washington law.

## II.     The Arbitration Agreement

The Federal Arbitration Act ("FAA") provides that an arbitration agreement in a written contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement."  *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 (W.D. Wash. 2014)

(citing *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Plaintiffs do not dispute that Amazon's Conditions of Use call for arbitration of "[a]ny dispute or claim relating in any way to [a customer's] use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com." (Def. Amazon.com, Inc's Mem. Supp. Mot. Compel Arbitration, ECF No. 31-1, at 3.) However, Plaintiffs assert that this agreement does not apply to each of them, for somewhat different reasons. The Court addresses the applicability of the provision to each plaintiff, then turns to Plaintiffs' arguments that apply to both of them: that the Conditions of Use are illusory, and the class action waiver is unenforceable.

### A. Plaintiff Payne

Plaintiffs argue that the arbitration agreement does not apply to Plaintiff Payne, who purchased glasses for himself and Harris, because Amazon did not provide adequate notice of the Conditions of Use, including the arbitration agreement. Plaintiffs point to *Nicosia v. Amazon.com*, 834 F.3d 220 (2d Cir. 2016), in which the Second Circuit, applying Washington law, found that reasonable minds could disagree about whether Amazon provided sufficient notice of its terms. The court explained that the key inquiry was "whether a reasonably prudent offeree would know that the 2012 Conditions of Use governed, such that her purchase manifested implied assent to the additional terms." *Id.* at 236. The court then explained that the top of Amazon's "Review Your Order" page said, "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," and that the words "conditions of use" were in blue text indicating they were a hyperlink to the full conditions. *Id.* The court said that there was a significant amount of other text on the page, including a purchaser's payment

information and address, shipping options, shipping cost, the subtotal, estimated taxes, and the "Place your order" button—all in varying colors and sizes. *Id.* The court said, "Nothing about the 'Place your order' button alone suggests that additional terms apply, and the presentation of terms is not directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance." *Id.* at 236–237. The court concluded that since reasonable minds could disagree about whether there was reasonably conspicuous notice of the terms, the notice was not sufficient as a matter of law. *Id.* at 237. Consequently, the court held that the plaintiff had plausibly stated a claim for relief sufficient to overcome a 12(b)(6) motion to dismiss. *Id.* at 238.

Plaintiffs argue that the Amazon order page used by Payne to purchase the glasses is essentially the same as the one in *Nicosia*, except that the statement "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," was moved next to one "Place your order" button and just below another "Place your order" button. The Court agrees with that characterization. However, *Nicosia* makes clear that a difference in placement is not insignificant. While the Second Circuit did not specify whether any particular attribute of the order page was dispositive, it indicated it would have looked more favorably on terms "directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance." *Id.* at 236–237. Thus, *Nicosia* provides little, if any, support to Plaintiffs' argument.

Since *Nicosia*, courts have upheld arbitration agreements presented to users in a similar manner that Amazon presented its Conditions of Use to Payne. In *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017), the Second Circuit held that a similar presentation of an

9

arbitration agreement provided sufficient notice under California law. The *Meyer* court explained that in order to create an account, a user had to click on a registration button directly above a statement that read, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." *Id.* at 78. As with Amazon's Conditions of Use below or next to its "Place your order" button, the words "terms of service" below Uber's registration button were in blue text and were a hyperlink to complete terms, including an arbitration agreement. *Id.* The court explained that since the hyperlinked terms were presented adjacent to and at the same time as the user is asked to manifest assent (by clicking the register button), a reasonably prudent user would understand that she was agreeing to the terms by registering. *Id.* Therefore, the defendant had provided sufficient notice of the arbitration agreement. *Id.* at 79. Similarly, a California district court applied Washington law to find that Amazon had provided sufficient notice of its arbitration agreement "because the disclosure and hyperlink that appear on the Amazon checkout page are of the same nature as those upheld in courts across multiple districts, including those applying Washington law." *McKee v. Audible, Inc.*, No. CV-17-1941-GW-(Ex), 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017) (citing *Doe v. Project Fair Bid Inc.*, No. C11-809 MJP, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011)); *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *2–3, 6 (W.D. Wash. Aug. 17, 2007); *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012)). While there is some variation in the presentation of terms among the cases cited, both *Selden* and *Fteja* involved a statement like the one at issue, with hyperlinked terms below a "sign up" button. *Selden*, 2016 WL 6476934, at *5; *Fteja*, 841 F. Supp. 2d at 835. Both courts

concluded that the user had assented to those terms by clicking the button. *Selden*, 2016 WL 6476934, at *5; *Fteja*, 841 F. Supp. 2d at 841. The Court agrees with these courts in concluding that a reasonably prudent offeree would know that he agreed to Amazon's Conditions of Use by clicking the "Place your order" button when that button appeared directly next to or above a statement hyperlinking to conditions and the statement indicated the user agreed to those conditions by ordering. *See Nicosia*, 834 F.3d at 236. *See also Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015) (finding Amazon provided notice of its Conditions of Use by placing the same statement with hyperlink below a "Review your order" header) aff'd sub nom. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017). Consequently, the Courts finds Payne had notice of the Conditions of Use and manifested his assent to them by clicking the "Place your order" button.

### B. Plaintiff Harris

Harris was given a pair of eclipse glasses by Payne, her fiancé. Unlike Payne, Harris did not personally assent to an arbitration agreement in the process of obtaining the eclipse glasses and is thus a nonsignatory with respect to Payne's arbitration agreement with Amazon.[3] Amazon argues that her claims are nonetheless subject to arbitration. "In determining whether parties have agreed to arbitrate a dispute, [courts] apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d

---

3. Amazon argues that Harris's claims related to her use of the eclipse glasses are subject to arbitration because she agreed to arbitration when she created an Amazon account and made purchases through that account, even though that account was not used to purchase any eclipse glasses. The Court need not address that argument to resolve this motion.

1046, 1049 (9th Cir. 1996)). "General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Id.* at 1045 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)). These principles include equitable estoppel. *Id.* The Ninth Circuit has recognized two types of equitable estoppel in the arbitration context. First, the court has recognized that nonsignatory plaintiffs may be able to enforce an arbitration agreement against a signatory defendant. *Id.* at 1046 (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)). Second, a nonsignatory plaintiff may be compelled to arbitrate her claims if she "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* (quoting *DuPont*, 269 F.3d at 201). It is the second variety of equitable estoppel that is relevant here.

Amazon asserts that Harris's claims are subject to arbitration following the Washington Supreme Court's ruling in *Townsend v. Quadrant Corp.*, 268 P.3d 917 (Wash. 2012). In *Townsend*, plaintiff home purchasers and their children brought claims for unfair business practices, negligence, negligent misrepresentation, and breach of warranty (among others) against a defendant homebuilder and its parent companies. *Id.* at 919. The homeowners alleged that the builder's poor workmanship resulted in serious construction defects that in turn caused personal injuries from mold, pests, and poisonous gases. *Id.* The builder moved to compel arbitration of the claims, citing a clause in the purchase agreements signed by each homeowner. *Id.* The Washington Supreme Court examined whether the homeowners' children, who were nonsignatories of the purchase agreements, were bound by the agreements' arbitration clauses to the same extent as their parent-signatories. *Id.* at 922. The court

determined that the children were equitably estopped from avoiding arbitration because their claims fell within the limited category of cases in which a nonsignatory seeks to knowingly exploit a contract by claiming the benefits within it, while avoiding the burdens it imposes. *Id.* (citing *Mundi*, 555 F.3d at 1045–46). The court rejected the plaintiffs' argument that the children were not attempting to enforce the purchase agreements and did not base their claims on any warranty in them. *Id.* The court explained:

> Throughout the pleadings . . . the parents and children are referred to collectively as the "plaintiffs" and they present eight identical causes of action. Additionally, two of the causes of action alleged by the parents and their children relate directly to the [purchase agreements], including an allegation of breach of warranty and a request for rescission. It is apparent, contrary to the contention made by the [parents], that the children are attempting to enforce the terms of the [purchase agreements] and that they base their claim for breach of warranty on the warranties contained therein.

*Id.* The court concluded that since the children were attempting to obtain the benefits of the contract without the burden of compelled arbitration, they were attempting to exploit the purchase agreements. *Id.* Thus, the court concluded they were bound by the arbitration clauses to the same degree as their parents, through equitable estoppel. *Id.*

The Court sees no meaningful difference between *Townsend* and the present case. Like the parents and children in *Townsend*, Payne and Harris bring their claims together as a signatory and nonsignatory. Like the plaintiffs in *Townsend*, Payne and Harris assert identical causes of action and their complaint repeatedly refers collectively to "Plaintiffs"—including Payne, Harris, and putative class members. Like the plaintiffs in *Townsend*, Plaintiffs bring a breach of warranty claim that rests on the contract between Payne and Amazon, which included an arbitration agreement. Plaintiffs' other claims are also much like those asserted in *Townsend*,

13

including negligence, negligent misrepresentation, and unfair business practices claims. Plaintiffs assert that *Townsend* only applies to cases involving express rather than implied warranties, but the Washington Supreme Court did not even specify which type of warranty was at issue. The Court finds no indication that *Townsend* is limited to express warranties. Plaintiffs also argue that their case is unlike *Townsend* in that the children did in fact receive the benefit of the homes (shoddy though they may have been), to the same extent as their parents, while Harris did not receive the benefit of ISO-compliant eclipse glasses. However, the Court sees no meaningful difference between the receipt of an injurious house and the receipt of an injurious pair of glasses.[4] The Court concludes that, like the children in *Townsend*, Harris is attempting to avoid the burden of arbitration while retaining the benefit of rights based on Payne's contract with Amazon. As a result, she is in the limited category of nonsignatories who are equitably estopped from avoiding a signatory's arbitration agreement. Since the Court concludes equitable estoppel subjects Harris to arbitration to the same degree as Payne, it declines to address Amazon's other asserted bases for arbitration against Harris.

### C. Whether the Conditions of Use Are Illusory

Plaintiffs argue that they are not subject to arbitration because the arbitration agreement is illusory. "In Washington, a contract is illusory only if it lacks all consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to *any* parts of the contract." *Ekin,* 84 F. Supp. 3d at 1176 (citing *Gress v. Conover Ins., Inc.*, 494 F. App'x 772, 774 (9th Cir. 2012); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 743–44 (Wash. 2005)). Plaintiffs

---

4. Plaintiffs further argue that *Townsend* was limited to its facts in *Stuart v. Korey*, No. C16-1815 RSM, 2017 WL 1496360, at *5 (W.D. Wash. Apr. 26, 2017). However, that case only addresses the *Townsend* decision from the Washington Court of Appeals, not the Washington Supreme Court, and deals with the unrelated issue of when a nonsignatory parent company may enforce an arbitration agreement signed by a signatory subsidiary.

argue that the agreement is illusory because Amazon's Conditions of Use contain a limitation on liability, bar statutory damages, and give Amazon a unilateral right to alter the arbitration agreement without notice. Plaintiffs' argument based on the limitation on liability is essentially the same as that they raised with respect to the choice of law provision. Relying on *Smith v. D.R. Horton*, 790 S.E.2d 1 (S.C. 2016), they argue that the limitation on liability renders the entire Conditions of Use, including the arbitration agreement, unenforceable. As explained above, the Court finds the Conditions of Use to be distinguishable from the contract in *Smith*. Further, even if the limitation on liability was unenforceable, the Conditions of Use include a severability clause and, under Washington law, unconscionable provisions are severable from an otherwise valid arbitration agreement, so long as they do not pervade the agreement. *Zuver v. Airtouch Comm'cns, Inc.*, 103 P.3d 753, 768–69 (Wash. 2004). Thus, the limitation on liability could be severed from the Conditions of Use if it was unenforceable.

Next, Plaintiffs' argue that the Conditions of Use are illusory because the arbitration agreement prevents recovery of statutory damages. However, the Conditions of Use plainly do allow for recovery of statutory damages in arbitration, stating, "an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages)" (Mot. Compel, Exs. to Vairo Decl., Ex. G., Conditions of Use, ECF No. 31-3, at 24.)

Finally, Plaintiffs argue that the Conditions of Use are illusory because they retain for Amazon a unilateral right to alter the Conditions at any time.[5] However, a unilateral right to modify a contract does not automatically render a contract illusory. *Ekin,* 84 F. Supp. 3d at

---

5.   Plaintiffs do not allege that Amazon actually used this provision to modify the Conditions of Use.

1175. Rather, such a provision is one factor courts have looked at to determine if a contract is unconscionable and therefore unenforceable. *Id.* at 1176. Courts have determined that Amazon's Conditions of Use are not illusory due to the modification clause because Amazon still has performance obligations under the Conditions and Amazon remains "bound by the duty of good faith to carry out its contractual obligations." *Fagerstrom*, 141 F. Supp. 3d at 1064; *see also McKee*, 2017 WL 4685039, at *13. Further, even if the modification clause did make the Conditions of Use illusory, it could be severed from the rest of the contract to avoid invalidating it in its entirety. *See L.A. Fitness Int'l LLC v. Harding*, No. C09-5537-RJB, 2009 WL 4545079, at *4 (W.D. Wash. Nov. 25, 2009) ("Even if the modification clause . . . were to be considered unconscionable, its application is not at question here; severability would be appropriate and the remainder of the contract could stand."). Consequently, the Court finds that the Conditions of Use are not illusory.

### D. Whether the Class Action Waiver Is Unenforceable

Lastly, Plaintiffs argue that the class action waiver in the Conditions of Use is unenforceable. Therefore, they assert that they should either be allowed to arbitrate as a class or avoid arbitration entirely. Plaintiffs acknowledge that the Supreme Court has enforced mandatory arbitration provisions even when those provisions prevent a putative class of plaintiffs from bringing their claims together. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348–50 (2011); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234–39 (2013). However, Plaintiffs argue that the public health and safety implications of this case make it different. Plaintiffs do not identify any language in these precedents, or in subsequent decisions, which suggests they do not apply when there is a threat to public safety, and the Court

has not found any support for this proposition. Accordingly, these precedents dictate that individual arbitration may not be avoided based on the class action waiver. *Concepcion*, 563 U.S. at 348–50.

The Court concludes that both Plaintiffs' claims are subject to arbitration. As a result, the Court finds it is not necessary to address Amazon's alternative motions.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's motions to compel arbitration is **GRANTED**, and this action is **DISMISSED** without prejudice.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**July 24, 2018**
**Charleston, South Carolina**